435 So.2d 955 (1983)
Kevin M. EVERETT, Appellant,
v.
STATE of Florida, Appellee.
No. AK-259.
District Court of Appeal of Florida, First District.
August 5, 1983.
*956 William W. Corry and Dana C. Mathews, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Wallace A. Allbritton, Asst. Atty. Gen., Tallahassee, for appellee.
SHIVERS, Judge.
Everett appeals his conviction and sentence for vehicular homicide and attempted leaving the scene of an accident. Appellant has raised several points on appeal, only two of which merit discussion. Appellant argues that the trial court erred in refusing to grant appellant's requested jury instructions on jay-walking and in refusing to allow evidence of decedent's blood alcohol level. We find that the trial court committed no reversible error and affirm.
Everett was a student at Tallahassee Community College. On Wednesday, April 1, 1981, Everett and four other boys spent the evening at Tommy's Deep South Music Hall on the West Tennessee Street strip in Tallahassee. Three pitchers of beer were ordered during the evening and consumed among the five boys. Everett testified that he consumed approximately four or five glasses of beer. There was testimony that Everett was "nursing" his beer that evening. During a band break, at approximately 10:30 P.M., the five boys walked out to the parking lot at Tommy's and shared a single "joint" of marijuana. Everett was observed to take two or three puffs. Three of the boys, Everett, his brother Scott, and Valdeen Fletcher, left Tommy's around 12:30 or 1:00 A.M. April 2, 1981. Everett testified that he was not intoxicated at that time either from alcohol or from marijuana. The three boys decided that Everett should drive his brother's 1977 Chevrolet Monte Carlo. Although Everett's driver's license restricts him to driving only while wearing his glasses, he was not wearing his glasses that evening. Everett's vision without *957 glasses is 20/50 in each eye. It was a misty night and the inside of the windshield began to fog up because Scott and Valdeen lit cigarettes upon leaving the parking lot. Everett testified, however, that the defroster and windshield wipers were turned on, the inside of the windshield was wiped, and that it was clear. The boys proceeded down West Tennessee Street at about 35-40 miles per hour. The speed limit in that section was 35 miles per hour.
At the 600 block of West Tennessee Street, the Monte Carlo driven by Everett struck and killed Allen Brent England, who was attempting to cross Tennessee Street in front of the Brew and Cue Bar. England was not walking in an authorized pedestrian crosswalk, nor was he in a lighted area. Witnesses saw him step off the curb and proceed directly toward the median. Other witnesses said England could have avoided being struck if he had continued walking and had not stopped before reaching the median. Everett saw England only a split second before the impact. Valdeen "heard a thump" and said, "Kevin, I think we hit something. I think someone has been hit." Everett said, "Oh, my God."
After the impact Everett did not immediately stop, but drove to the next intersection and drove around the block. Officer Wooten, in a marked patrol car, had become alerted to the situation and followed Everett's Monte Carlo. Officer Wooten testified that the patrol car's blue and red flashing lights were activated, but the Monte Carlo did not pull over. Instead, the Monte Carlo proceeded back to the scene of the accident with the patrol car following. Once stopped, Officer Wooten approached Everett's vehicle and asked Everett to step out. Officer Wooten detected an odor of alcohol on Everett and placed him under arrest for driving under the influence. Everett testified that he was in a state of shock and had taken the shortest route possible back to where the impact occurred.
Everett was charged with manslaughter driving while intoxicated (DWI), manslaughter by culpable negligence, and leaving the scene of an accident. At the trial, the court granted appellant's motion in limine to exclude the results of a breathalyzer test conducted on appellant, but the court denied appellant's motion to exclude evidence pertaining to marijuana. The jury found Everett not guilty of manslaughter DWI, guilty of vehicular homicide (a lesser included offense of manslaughter by culpable negligence), and guilty of attempted leaving the scene of an accident (a lesser included offense of leaving the scene of an accident). The trial court placed Everett on five years probation.
Appellant argues that the trial court erred in not giving appellant's requested jury instructions on jay-walking. Evidence introduced at trial tended to show that the decedent was jay-walking and that under the circumstances of this case the jay-walking was a significant factor in the accident. Appellant argues that decedent's conduct may be a factor in demonstrating the absence of culpable negligence. Appellant cites Peel v. State, 291 So.2d 226 (Fla. 1st DCA), cert. denied, 298 So.2d 164 (Fla. 1974), to support this argument. In Peel, this court found reversible error where the trial court failed to give a requested jury instruction on vehicles being driven on the left side of the roadway when approaching within 100 feet of or traversing any intersection. The jury in Peel could have found that decedents' automobile was in the left side of the roadway within 100 feet of the subject intersection and, thus, could have found the negligence of decedents to be solely responsible for the accident.
We are unable to agree with appellants, however, that the instant case involves a situation similar to Peel. In Filmon v. State, 336 So.2d 586 (Fla. 1976), appeal dismissed, 430 U.S. 980, 97 S.Ct. 1675, 52 L.Ed.2d 375 (1977), the court discussed the proper test for determining whether the trial court has erred in refusing to give instructions concerning the negligence of decedents in prosecutions for manslaughter by culpable negligence. The court stated that the conduct of decedents can only be controlling if it were the sole proximate cause of the accident. Where there is no *958 view of the evidence upon which the jury can reasonably conclude that the acts of decedents are the sole proximate cause of the accident, it is not error to deny jury instructions based on the actions of decedents. In the instant case, it is clear that the conduct of decedent contributed to his own demise. We do not believe, however, that a jury could reasonably conclude that decedent's conduct was the sole proximate cause of the accident. Viewing the testimony in a light most favorable to appellant, appellant had been drinking, smoking marijuana, and driving without glasses which he is required by statute to wear. It is difficult to imagine that these factors played no part in the accident. Therefore, under Filmon, the trial court did not err in denying the requested jury instructions.
Appellant also argues that the trial court committed reversible error in refusing to admit evidence of the decedent's blood alcohol level. The trial court found the evidence to be inadmissible hearsay because appellant could not prove that the chemical testing of decedent's blood was done in accordance with the rules and regulations of the Department of Health and Rehabilitative Services. Appellant contends that the evidence fell under the public records exception to the hearsay rule and cites Smith v. Mott, 100 So.2d 173 (Fla. 1958).
We need not decide this hearsay question, however, since the decision of the trial court, if error, is harmless. Where an error does not affect a constitutional right, the reviewing court will find it harmless unless it is likely that, but for the erroneous ruling, the result would have been different. Palmes v. State, 397 So.2d 648 (Fla. 1981), cert. denied, 454 U.S. 882, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981). The jury in the instant case had evidence before it that decedent had spent most of the evening at Bullwinkle's, another Tennessee Street bar, and that he had been drinking wine. Therefore, it is unlikely that the outcome of this case would have been different had the trial court admitted the blood alcohol evidence.
Accordingly, the judgment is AFFIRMED.
WIGGINTON, J., concurs.
ROBERT P. SMITH, Jr., J., specially concurs with opinion.
ROBERT P. SMITH, Jr., Judge, concurring specially.
I concur in the court's decision to affirm Everett's convictions for vehicular homicide in the death of pedestrian England, section 782.07, Florida Statutes (1981), and for attempting willfully to leave the scene of the accident, sections 316.027(2), 775.081(1), 777.04(4)(d), Florida Statutes (1981). I agree also that the circuit court did not err in refusing to charge the jury, as requested by Everett, in terms of various statutes regulating pedestrians crossing the streets. However, I would justify the refusal of these charges on a somewhat different ground than that which my colleagues draw, quite accurately I must say, from Filmon v. State, 336 So.2d 586 (Fla. 1976), and Peel v. State, 291 So.2d 226 (Fla. 1st DCA 1974).
Let us be quite clear about the instructions requested by Everett. There were four, each copied verbatim from a statute regulating pedestrian behavior in crossing a roadway:

Requested instruction No. 12: A crosswalk is that part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway, measured from the curb, or in the absence of curbs, from the edges of the traversable roadway or any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface. [§ 316.003(6)(a) and (b), Fla. Stat. (1981).]

Requested instruction No. 14: No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield. [§ 316.130(8), Fla. Stat. (1981).]

*959 Requested instruction No. 15: Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles on the roadway. [§ 316.130(10), Fla. Stat. (1981).]

Requested instruction No. 16: Between adjacent intersections at which traffic control signals are in operation, pedestrians shall not cross at any place except in a marked crosswalk. [§ 316.130(11), Fla. Stat. (1981).]
Peel and Filmon hold that instructions such as these should be given if the jury could conclude from the evidence that the decedent's conduct, arguably in violation of these statutory standards, was the sole proximate cause of the collision and his death, or, put another way, if the jury could have concluded that the defendant's alleged driving recklessness was no proximate cause at all. Otherwise, Peel and Filmon hold, the instructions should not be given.
Peel and Filmon carry the trial judge, settling instructions in the charge conference, and the appellate court, reviewing convictions in which such instructions are not given but not acquittals in which they are given, into difficult analytical terrain.
It is clear, first, that what is required is a weighing of the evidence on proximate cause. Except for purposes of considering a motion for judgment of acquittal or a motion for new trial, this function ordinarily is that of juries, not that of judges. Moreover this judicial weighing of the evidence and its inferences occurs in the trial court at a most unlikely stage of the proceedings, after the court has already denied defense motions at the close of the state's evidence, and again at the close of all evidence, for judgment of acquittal. As those motions will have been denied because the evidence, taken in a light most favorable to the state, was judged sufficient to support a jury finding beyond a reasonable doubt that the defendant's recklessness was a proximate cause of the decedent's death, and that the latter's violation or neglect of regulatory statutes applicable to him was not the sole cause of his death, it is not clear from Peel and Filmon what additional decision is required of the trial judge as a predicate for giving or refusing the defense-requested instructions on statutes applicable to the decedent.
In Peel, it should be noted, this court viewed the causation evidence in a light favorable to the accused: "This statute would only be relevant to this case if the jury had believed appellant's version of the accident... ." 291 So.2d at 228. But Filmon, finding that the requested instructions in that case were properly denied, appears to discuss the evidence "in a light most favorable to the State ... ." 336 So.2d at 588, 590. Admittedly, Filmon went on to say that "there is no view of the evidence upon which the jury could have reasonably concluded that the decedents' asserted act of failing to yield the right-of-way was the sole proximate cause of the accident." 336 So.2d at 591. But as the defendant's testimony or view of the evidence was not recited in Filmon, as it was in Peel, the two decisions are difficult to reconcile, and together they offer no clear standard for giving or refusing the requested instructions.
More fundamentally incongruous than this judicial evaluation of proximate cause questions, Peel and Filmon appear to predicate the giving or refusal of such instructions on the strength of the state's evidence that the accused, by speeding, erratic driving, intoxication, and the like, was wanton and reckless in his driving. If the prosecution's case is weak or close, it appears that the instructions are to be given, but not otherwise. This seems to me a doubtful equation. The culpability of the defendant's conduct surely is to be determined in light of all the circumstances, including those created by the decedent's conduct; but whether the decedent's conduct violated a traffic statute seems to me an entirely different question, related not to the culpability of the defendant's conduct, nor to its causative effect, but to the quality of the decedent's conduct. Moreover, if charging on the quality of the decedent's conduct is of use to the defense, which I do not doubt, *960 it seems odd to grant the defendant that advantage when he needs it least and to deny it when needed most.
Filmon's decisive rationale appears to be this:
Appellant's additional contention that the conduct of the decedent somehow bears upon the wantonness or recklessness of his acts is not persuasive. The acts of the decedent can neither add to nor detract from the quality of appellant's conduct. [336 So.2d at 591.]
This statement almost proves too much. If for purposes of granting or denying a requested defense charge it is deemed irrelevant that the decedent jaywalked into the path of defendant's vehicle and, let us say, lay down drunk in the street, then that proof would also seem irrelevant, except as it is unavoidably and narrowly adduced to show that a fatal accident in fact occurred. Yet we know this proof is not irrelevant. 1 Wharton's Criminal Law § 47 (14th ed. 1978):
It is no defense or excuse in a prosecution for a crime that the victim was contributorily negligent. However, the victim's negligence is relevant on the question whether the defendant was himself guilty of criminal negligence and, if so, whether such negligence was the proximate cause of the victim's injury or whether such injury was caused solely by the victim's negligence.
See also 3 Wharton's Criminal Law and Procedure § 986 (1957).
In my opinion the requested instructions in this case were properly denied, and they are properly to be denied in all such cases, Peel and Filmon included, because though the decedent's conduct is relevant his violation of a traffic statute is not. The matter in issue before the jury is whether the defendant was culpably negligent and whether that recklessness contributed as a legal cause of the accident and ensuing death. Those precise questions do not call for subsidiary decisions on whether the decedent's careless conduct, relevant though it is, violated statutes against jaywalking, against driving in the wrong lane, or against speeding. Whether the decedent violated statutes such as section 316.003 and .130, invoked in this case, would be pertinent only if the decedent were to be charged with those violations, see section 316.655, Fla. Stat. (1981), or if, as in a civil action, the decedent's contributory negligence is a matter directly in issue. But in motor vehicle homicide prosecutions, contributory negligence is no defense as such, and the verdict is no finding on such an issue. State v. Redden, 269 So.2d 415, 417 (Fla. 2d DCA 1972):
Redden also argues that if the child had not run into the road the accident would not have occurred. This argument is fallacious. What is charged here is Redden's culpable negligence, and the deceased's conduct may be a factor ... in demonstrating the absence of culpable negligence, but contributory negligence is no defense. In Russ v. State, 1939, 140 Fla. 217, 191 So. 296, the deceased was walking across a busy highway, and it was shown that the defendant had driven off the road in an effort at avoidance. Only an allegedly excessive speed grounded the charge of culpable negligence. The Supreme Court stated (191 So. at 299), "the deceased when crossing the highway was charged with the exercise of such care as was necessary for her own self preservation." That dictum is unfortunate if it encourages belief in a "but for" rule in manslaughter prosecutions. Of course the deceased's conduct may be relevant to the question of culpable negligence on the defendant's part, but it would not even be a valid defense in a civil action founded on gross negligence, which is of lesser degree than culpable negligence.
See also Graives v. State, 127 Fla. 182, 172 So. 716 (1937); 3 Wharton's Criminal Law and Procedure § 986 (1957):
It would appear as an abstract matter that, if the defendant is to be found guilty on the basis that he was merely negligent in the ordinary civil liability sense, fairness requires that the contributory negligence of the victim be a bar to *961 criminal responsibility. In those instances in which the defendant's negligence was in fact more than mere civil negligence, the general criminal rule [barring proof of contributory negligence, as such] should continue to prevail.
Such instructions as were requested in this case are correctly understood, both by experienced trial lawyers and by jurors, as a judicial endorsement, oblique and restrained though it may be, of defense arguments upon other matters directly in issue. In a time when judicial commentary favoring the prosecutor's view of the evidence seems increasingly fashionable, e.g., Whitfield v. State, 433 So.2d 1285 (Fla. 1st DCA 1983), there is some irony in my restrictive view of appropriate defense instructions and some rough justice in the notion that "balancing" the charge, by such instructions as these, is appropriate if not essential. Though I recognize that denying judicial argumentation to the defense will not deny it to the prosecutor, Smith v. State, 394 So.2d 407 (Fla. 1981), I would not extend the practice further than Supreme Court decisions explicitly require it.
Because I consider that this pedestrian's conduct was relevant in the determination of the defendant's culpability and its causative effect in the pedestrian's death, I think the pedestrian's alleged intoxication, influencing his conduct, was also within the bounds of relevancy. But in my opinion the trial court did not err in excluding the proffered testimony of a physician concerning the alcohol content of the pedestrian's blood, since that testimony was predicated upon a test analysis document, prepared by another, which was not authenticated by a person having knowledge as a document admissible under section 90.803, Florida Statutes (1981).
If my views on the Peel-Filmon issue were to prevail in this court, I would recognize that the resulting decision expressly and directly conflicts with a fair reading of Filmon, in hopes that the Supreme Court would accept jurisdiction, art. V, § 3(b)(3), Fla. Const., either to correct this misunderstanding of the law or to reexamine the implications of Filmon.