642 So.2d 91 (1994)
William Earl UNION, Appellant,
v.
STATE of Florida, Appellee.
No. 93-1620.
District Court of Appeal of Florida, First District.
September 7, 1994.
Nancy A. Daniels, Public Defender, and David P. Gauldin, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Thomas Crapps, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This is an appeal from convictions of four counts of vehicular homicide. Appellant was also convicted of three counts of culpable negligence. Appellant argues the trial court erred in granting the State's oral motion in limine to prevent defense counsel from cross-examining the pathologist, who testified as to cause of death, as to whether any of those who died would have survived *92 had they been wearing seat belts.[1] Appellant contends that in so doing, and in instructing the jury over defense objection that the failure to wear seat belts is not a defense to vehicular homicide, the court in effect prevented him from putting on his defense. We affirm, because in vehicular homicide cases, unless it can be said that the decedent's conduct was the sole proximate cause of the homicide, or unless there is some reason why it would be unjust or unfair to impose criminal liability, the decedent's conduct does not supersede the defendant's conduct as the proximate cause of the homicide. Therefore, in the present case, the failure of the decedents to wear seat belts was not a defense, and the court did not err in granting the motion in limine or in instructing the jury.
The parties agree on the facts as presented to this court by appellant. During the early morning hours of April 12, 1992, Barner was driving a car on highway 85 north of Crestview, Florida, on his way to Florala, Alabama. His passengers were Smith, Jones, and Marshall. At about three o'clock that same morning, Bembo left the Flower Quarters club driving his car. Appellant, Union, left the same club driving his automobile. His passengers were Shipman, Sledge, and Gaston. Peacock and Brantley also left the club at about the same time as Union, driving their respective automobiles.
The state's case showed that at one point, Bembo passed four cars, including appellant's car, on highway 85, a two lane road. Some witnesses believed Bembo and appellant were driving 85-90 MPH before they reached the curve where the accident occurred. Appellant was traveling in the southbound lane of highway 85. Brantley and Peacock were traveling behind appellant. Barner was traveling in the northbound lane of highway 85. The state's theory was that appellant pulled into the north bound lane in order to pass Bembo, and collided with Barner's vehicle.
There was evidence that appellant braked and skidded about 258 feet before hitting Barner's car. Then Barner's car and appellant's car, locked together, spun around. Barner's car was displaced 7 1/2 feet from the point of impact; appellant's car was displaced 1 foot from the point of impact. Brantley skidded about 183 feet, hit Barner's car, traveled another 59 feet, and came to rest on the shoulder of the road in the bushes. Barner's car was displaced 53 feet, remaining in the southbound lane facing west. Peacock came over the hill and applied his brakes, skidded 167 feet, swerved into the northbound lane, and hit the right side of appellant's car, displacing it 53 feet.
The state's accident reconstruction expert testified he calculated appellant's car was going 97.4 MPH before braking, and was still going 53.09 MPH at impact; Barner was going 42.2 MPH before braking, and 39.68 MPH at impact; Brantley was going 79 MPH before braking; and Peacock was going 68 MPH before braking. The defense accident reconstruction expert calculated the speeds differently. The speed limit was 55. There was evidence the road condition was moist or wet and that it was foggy.
Due to a miscommunication, no blood alcohol tests were taken. There was evidence that appellant and Bembo may have consumed alcohol at some point before the crash: a quart beer bottle was found under the seat of appellant's car, and Bembo testified he had consumed beer that evening.
Two passengers in Barner's car, Smith and Jones, and two passengers in appellant's car, Shipman and Sledge, died as a result of their injuries received in the accident. Barner, who was wearing a seat belt, survived. None of those killed wore seat belts. Shipman (right front passenger in appellant's car), Smith (right front passenger in Barner's car), and Jones (left rear passenger) died due to transection of the thoracic aorta, i.e., they bled to death internally from blunt trauma to the front of the chest. Sledge (left rear passenger in appellant's car) died from a brain case hemorrhage. There was evidence these injuries were consistent with a head-on collision. Dr. Kielman, the pathologist, *93 placed greater responsibility for the injuries on the initial frontal collisions than on the secondary collisions. The court granted the state's oral motion in limine preventing the defense from inquiring of the pathologist whether in his opinion those who died would have survived had they been wearing seat belts.
At the state's request and over defense objection, the court instructed the jury not to consider that the victims were not wearing seat belts. The defense request for an intervening cause instruction was denied. During deliberations, the jury inquired as to the difference between vehicular homicide and reckless driving.[2]
Appellant contends that Frazier v. State, 530 So.2d 986 (Fla. 1st DCA 1988), approved in part and quashed in part, 559 So.2d 1121 (Fla. 1990), is not dispositive of the issue raised here. In Frazier, the defendant was apparently under the influence of alcohol and was driving the wrong way down a street. When the police followed and turned on their blue light, defendant accelerated and went down another street the wrong way. He hit another car, and a passenger, who was not wearing a seat belt, died. Defendant was charged with DUI manslaughter. This court summarily rejected the argument that the court erred in failing to instruct the jury "on his theory of defense as it related to the element of causation of the crime. Specifically, the court declined to instruct the jury that the victim's failure to wear a seatbelt was a defense to the charge. We find no merit to the contention and affirm." It is unclear whether the court determined defendant was not entitled to the instruction on that defense theory because it was unsupported by the evidence produced at trial, or because it determined failure to wear a seat belt is never a defense. Also, as appellant points out, the case involved DUI manslaughter rather than vehicular homicide. Therefore, Frazier does not appear to directly control the issue raised here.
In M.C.J. v. State, 444 So.2d 1001 (Fla. 1st DCA), review denied, 451 So.2d 849 (Fla. 1984), there was evidence defendant, who did not have a Florida driver's license, had been driving an automobile at excessive speeds, knowing the brakes were defective. Empty beer cans were found on defendant's right front floorboard. When another driver pulled into her lane, defendant swerved, hitting an oncoming car in the other lane, and killing two people. On appeal, M.C.J. contended the evidence of causation was insufficient to support the conviction of vehicular homicide, because the car pulling in front of her was an independent intervening cause of the accident. The court rejected M.C.J.'s argument, because "if the intervening cause is foreseeable, the original negligent actor may yet be held liable ... it is necessary to determine whether the harm that occurred was within the scope of the danger created by the defendant's negligent conduct." The court concluded that:
although M.C.J. could not reasonably have foreseen the specific circumstance causing her to swerve her automobile, i.e., the Fiat's sudden turn into her lane of traffic, she should have reasonably foreseen that the same general type of harm might occur if she knowingly drove her vehicle with defective brakes at excessive speeds. Given the evidence before us, it is impossible to say ... that there is no evidence that the original tortfeasor set in motion a chain of events resulting in the deaths of the occupants of the other vehicle.
While M.C.J. did not involve any unlawful conduct by the decedent, Everett v. State, 435 So.2d 955 (Fla. 1st DCA 1983), did. In Everett, the defendant was charged with DUI manslaughter, but found guilty of the lesser included offense of vehicular homicide. In Everett, evidence was presented that the decedent had been jaywalking when he was struck and killed by Everett's car. The court affirmed the trial court's denial of a jury instruction on jay-walking despite appellant's argument that the jay-walking "may be a factor in demonstrating the absence of *94 culpable negligence," and this court's comment that "it is clear that the conduct of the decedent contributed to his own demise." This court determined that "[w]here there is no view of the evidence upon which the jury can reasonably conclude that the acts of the decedents are the sole proximate cause of the accident, it is not error to deny jury instructions based on the actions of decedents." 435 So.2d at 957-58.
J.A.C. v. State, 374 So.2d 606 (Fla. 3d DCA 1979), cert. denied, 383 So.2d 1203 (Fla. 1980), is consistent with Everett. There the court reversed a vehicular homicide conviction resulting from a drag race in which the defendant's passenger died. The court stated:
[t]he accident occurred only because the decedent, while attempting to operate the gear shift, instead grabbed the steering wheel and caused the vehicle to go out of control. Under these circumstances, the allegedly wrongful conduct of the respondent could not be deemed the proximate cause of the homicide since its effect was superseded by the decedent's own independent intervening act.
374 So.2d at 607. These cases indicate that the decedent's conduct may only be asserted as a defense to vehicular homicide when that conduct could be viewed as the sole proximate cause of the accident which resulted in the death. The decedents' failure to wear seat belts in the present case was not the sole proximate cause of the accident which resulted in their deaths.
Appellant analogizes the instant case to Velazquez v. State, 561 So.2d 347 (Fla. 3d DCA), review denied, 570 So.2d 1306 (Fla. 1990), which appellant characterizes as a determination that the defendant's actions were not the proximate cause of the victim's death because the victim willfully engaged in a drag race. The decedent in Velazquez did more than simply engage in a drag race, however. After the initial race had concluded without incident, the decedent suddenly turned around and raced in the other direction, reaching a speed of 123 MPH, crashed through a guard rail, jumped a canal, and died when he was ejected from the car and it landed on top of him. The decedent was not wearing a seat belt and had a high blood alcohol level. The court concluded that the decedent "in effect, killed himself by his own volitional reckless driving  and consequently, it would be unjust to hold the defendant criminally responsible for this death." 561 So.2d at 353. The failure of the victims to wear seat belts in the instant case is not comparable to the behavior of the decedent in Velazquez, consequently that case does not provide a basis for finding it unjust or unfair to impose criminal liability on appellant.
As to appellant's second issue on appeal, we find no abuse of discretion in the trial court's qualification of expert witnesses. The judgments and sentences are AFFIRMED.
JOANOS, LAWRENCE and DAVIS, JJ., concur.
NOTES
[1] Appellant cites section 316.614(5), Florida Statutes, which makes it unlawful for anyone over age 16 to be a front seat passenger unless restrained by a safety belt when the motor vehicle is in motion.
[2] "There are two statutory elements to vehicular homicide: (1) the defendant must operate a motor vehicle in a reckless manner likely to cause the death of, or great bodily harm to, another, and (2) this reckless operation of a motor vehicle must be the proximate cause of the death of a human being." Velazquez v. State, 561 So.2d 347, 349 (Fla. 3d DCA 1990).