[No. 3232-9-III.   Division Three.   August 6, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. FORTINO
ESCOBAR, JR., *Appellant.*

*Gary G. McGlothlen,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *John C. Monter* and *Terry Austin, Deputies,* for respondent.

MUNSON, J.—Fortino Escobar was involved in a 3–car accident on a 2–lane road July 31, 1977, in which the driver of another car was killed. Mr. Escobar was convicted of driving while intoxicated; subsequently, he was charged and convicted of negligent homicide. He appeals the latter conviction, contending (a) double jeopardy; (b) pyramiding of inferences; and (c) his actions were not a proximate cause of the death.

Mr. Escobar and others had been swimming and drinking beer at the Yakima River east of the city of Yakima. The gathering broke up and Mr. Escobar and his friend, Mr. Ayon, along with several other friends, left in separate cars. Two witnesses testified they observed the Escobar and Ayon vehicles traveling at a high rate of speed and repeatedly passing one another until the vehicles were out of sight. A few minutes later, these witnesses came upon the accident involving the Escobar and Ayon vehicles and a third vehicle just west of the Terrace Heights Bridge. Mr. Ayon was passing Mr. Escobar either on the bridge or while exiting the bridge and collided head on with an oncoming vehicle in the left–hand lane. As a result of the collision, the Ayon vehicle was thrown into the air, and subsequently hit the Escobar vehicle, which was in the proper traveling lane. Mr. Ayon was killed.

Mr. Escobar was charged immediately with driving while intoxicated. After several continuances because the prosecuting attorney was contemplating charging negligent homicide, Mr. Escobar was tried on September 22, 1977, by a district court jury. He was found guilty of driving while intoxicated. On January 5, 1978, Mr. Escobar was charged with negligent homicide arising out of the above accident. He entered a plea of not guilty and filed a motion to dismiss by reason of double jeopardy; his motion to dismiss was denied and he was convicted.

Negligent homicide is defined in RCW 46.61.520(1) as:

(1) When the death of any person shall ensue within three years as a proximate result of injury received by the driving of any vehicle by any person while under the influence of or affected by intoxicating liquor or drugs, or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the person so operating such vehicle shall be guilty of negligent homicide by means of a motor vehicle.

There are three distinct ways of committing the offense: (1) driving while under the influence or affected by intoxicating liquor or narcotic drugs; (2) driving in a reckless manner; or (3) driving with disregard for the safety of others. *State v. Eike*, 72 Wn.2d 760, 764, 435 P.2d 680 (1967).

■ The fifth amendment to the United States Constitution guarantees that no persons shall be "subject for the same offense to be twice put in jeopardy of life or limb". This guaranty is enforceable against the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 23 L. Ed. 2d 707, 89 S. Ct. 2056 (1969); *State v. Roybal*, 82 Wn.2d 577, 578, 512 P.2d 718 (1973). Further, article 1, section 9 of the Washington State Constitution provides in part: "No person shall . . . be twice put in jeopardy for the same offense." As we noted in *State v. Waldenburg*, 9 Wn. App. 529, 532, 513 P.2d 577 (1973):

The purpose of the ban on double jeopardy has been said to be to prevent "repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, . . ." *Green v. United States*, 355 U.S. 184, 187, 2 L. Ed. 2d 199, 78 S. Ct. 221, 61 A.L.R.2d 1119 (1957).

The provisions of both constitutions protect against a second prosecution after an acquittal or conviction for the same offense and further against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 23 L. Ed. 2d 656, 89 S. Ct. 2072, 89 S. Ct. 2089 (1969). The test for determining whether multiple charges constitute a single offense was stated in *Brown v. Ohio*, 432 U.S. 161, 166, 53 L. Ed. 2d 187, 194, 97 S. Ct. 2221, 2225 (1977),

quoting from *Blockburger v. United States,* 284 U.S. 299, 304, 76 L. Ed. 306, 52 S. Ct. 180 (1932):

> "The applicable rule is that where the same act or trans-action constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of [an additional] fact which the other does not. . . ."

This test focuses on the proof necessary to establish the statutory elements of each offense, rather than the actual evidence to be presented at trial. *Illinois v. Vitale,* 447 U.S. 410, 65 L. Ed. 2d 228, 100 S. Ct. 2260, 2267 (1980). *See also State v. Roybal, supra* at 580–83, where our court rejected the "same transaction" test.[1] In *Brown v. Ohio, supra,* the court held that one convicted of a greater offense may not be subject to a second prosecution on a lesser included offense since that would be the equivalent of two trials for the same offense. *Jeffers v. United States,* 432 U.S. 137, 53 L. Ed. 2d 168, 180, 97 S. Ct. 2207 (1977). In *Illinois v. Vitale, supra,* the court held that one convicted of a lesser included offense could not then be prosecuted for the greater offense. However, *Vitale* was remanded for a determination by the state court of whether the first crime was in fact a lesser included offense.

Here, driving while under the influence of intoxicants or drugs does contain different and separate elements from reckless driving.[2] Although alternative ways by which

---

[1]This test precludes charging more than one offense arising out of the same transaction or event. Driving while intoxicated arose out of the same occurrence as the negligent homicide. Therefore, under such a test the defendant could be convicted of one or the other, but not both.

[2]The definition of driving while intoxicated is found in RCW 46.61.502:

"A person is guilty of driving while under the influence of intoxicating liquor or any drug if he drives a vehicle within this state while:

"(1) He has 0.10 percent or more by weight of alcohol in his blood as shown by chemical analysis of his breath, blood, or other bodily substance made under RCW 46.61.506 as now or hereafter amended; or

"(2) He is under the influence of or affected by intoxicating liquor or any drug; or

negligent homicide may be committed, driving while intoxicated and reckless driving are "constituent element[s] in the perpetration of the greater offense.'" *State v. Johnson,* 60 Wn.2d 21, 24, 371 P.2d 611 (1962). Double jeopardy may exist if the offenses are identical "or if the lesser offense can be said to be 'a constituent element". *State v. Johnson, supra* at 24.

However, there is an exception:

> [W]here the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence."

*Illinois v. Vitale, supra,* 447 U.S. at 420 n.8, 100 S. Ct. at 2267, quoting *Brown v. Ohio, supra* at 169 n.7. This exception is recognized in *Diaz v. United States,* 223 U.S. 442, 448–49, 56 L. Ed. 500, 32 S. Ct. 250 (1912). In *Diaz,* the defendant had been convicted of assault and battery before a justice of the peace and some 26 days later the victim died and Diaz was charged with homicide. The court held there was no double jeopardy because at the time of the conviction of assault and battery, death had not ensued and obviously there could be no homicide until it occurred. Here, an element of negligent homicide is that the death "ensue within three years as a proximate result of injury received by the driving of any vehicle by any person . . ." RCW 46.61.520(1).

The facts which the State had at the time of the accident were that Mr. Escobar was traveling in his proper lane while Mr. Ayon was passing him and collided with an oncoming vehicle. Even though Mr. Escobar may have been driving while intoxicated, there is nothing in that prelimi-

---

"(3) He is under the combined influence of or affected by intoxicating liquor and any drug."

and reckless driving as applicable to this case is found in RCW 46.61.500(1):

"(1) Any person who drives any vehicle in wilful or wanton disregard for the safety of persons or property is guilty of reckless driving. Violation of the provisions of this section is a misdemeanor."

nary determination that would establish his intoxicated driving was a proximate cause of the accident or Mr. Ayon's death. It was not until the State sought and obtained the opinion of an expert who reconstructed the accident that the State had substantial evidence to charge Mr. Escobar with negligent homicide. Only then could the State prove Mr. Escobar was accelerating to more than 80 miles per hour, and Mr. Ayon to almost 90, which would sustain the alternative elements of "operation of any vehicle in a reckless manner or with disregard for the safety of others."[3] The accident reconstruction was begun the day Mr. Escobar was charged and according to the undisputed argument of the prosecutor before this court, the reconstruction testimony was not available at the time of the district court trial.

The State was further handicapped by JCrR 3.08[4] requiring the charge in district court, where the driving while intoxicated charge was pending, to be brought to trial within 60 days or face dismissal. Pursuant to RCW 10.43-.010,[5] once a misdemeanor or gross misdemeanor is dis-

---

[3]RCW 46.61.530 defines racing as reckless driving:

"No person or persons may race any motor vehicle or motor vehicles upon any public highway of this state. Any person or persons who wilfully compare or contest relative speeds by operation of one or more motor vehicles shall be guilty of racing, which shall constitute reckless driving under RCW 46.61.500, whether or not such speed is in excess of the maximum speed prescribed by law: *Provided however,* That any comparison or contest of the accuracy with which motor vehicles may be operated in terms of relative speeds not in excess of the posted maximum speed does not constitute racing."

[4]JCrR 3.08 states:

"Continuances may be granted to either party for good cause shown. Also, the court, on its own motion, may postpone the trial for good and sufficient reason. In either case, the continuance or postponement must be to a date certain. If the defendant is not brought to trial within 60 days from the date of appearance, except where the postponement was requested by the defendant, the court shall order the complaint to be dismissed, unless good cause to the contrary is shown. Dismissal under such circumstances shall be a bar to further prosecution for the offense charged."

[5]RCW 10.43.010:

"An order dismissing a prosecution under the provisions of RCW 10.37.020,

missed in district court, that dismissal shall act as a bar against the person being again prosecuted for the same misdemeanor or gross misdemeanor. While this might not affect the subsequent charge of negligent homicide which alleged the alternative means of commission by driving while intoxicated, it would eliminate the possibility of acquittal on negligent homicide and a subsequent finding of guilt as to the lesser included offense of driving while intoxicated. *But see State v. Cummings,* 87 Wn.2d 612, 555 P.2d 835 (1976).

The prosecutor candidly admitted during oral argument that he tried Mr. Escobar for driving while intoxicated because at the time he had insufficient evidence of causation to charge him with negligent homicide. Driving while intoxicated was the only crime the prosecutor could prove at the time. Later, when he had the available evidence, the prosecutor did charge Mr. Escobar with negligent homicide under the alternatives of reckless driving or disregard for the safety of others. He did not allege the third alternative of driving while intoxicated. Thus, we hold that because evidence of proximate cause was not available to prove the greater charge, Mr. Escobar was not placed in double jeopardy. *Diaz v. United States, supra.*

Mr. Escobar next alleges he was convicted because the State imposed inferences upon inferences to gain his conviction. He argues the evidence of racing some distance from the accident site raises first the inference that he was racing at the scene of the accident, and second that Mr. Ayon's death was the result of the racing. This, he argues, impermissibly "stacks" one inference upon another. *See, e.g.,* Annot., 5 A.L.R.3d 100 (1966). The testimony of two witnesses who observed the vehicles speeding and passing each other near the accident site, plus the testimony of the

10.46.010, and 10.46.090 shall bar another prosecution for a misdemeanor or gross misdemeanor where the prosecution dismissed charged the same misdemeanor or gross misdemeanor; but in no other case shall such order of dismissal bar another prosecution."

accident reconstruction expert, supplied ample evidence of racing at the scene of the accident. Racing, by statutory definition, is reckless driving. RCW 46.61.530. Therefore, the only issue is causation; the only inference made was that Mr. Escobar was racing. Racing per se will sustain a negligent homicide conviction if causation is shown. No other inference is required.

The last issue—whether the accidental vehicular death of one of two persons racing on a public highway was proximately caused by the other's conduct—has not been decided in this state. Decisions of other states fall in three categories: In *State v. Petersen,* 270 Or. 166, 526 P.2d 1008 (1974), *rev'g State v. Petersen,* 17 Or. App. 478, 522 P.2d 912 (1974), and adopting the dissent of the Chief Judge of the Court of Appeals, Oregon has held that:

> policy considerations are against imposing responsibility for the death of a *participant* in a race on the surviving racer when his sole contribution to the death is the participation in the activity mutually agreed upon.

(Footnote omitted.) *State v. Petersen, supra,* 17 Or. App. at 495–96, 522 P.2d at 921. *Thacker v. State,* 103 Ga. App. 36, 117 S.E.2d 913 (1961); *Commonwealth v. Root,* 403 Pa. 571, 170 A.2d 310, 82 A.L.R.2d 452 (1961). However, several other states hold on various theories that liability may be properly imposed upon the surviving racer. Some states hold that the surviving racer is liable as an aider and abettor. *Jacobs v. State,* 184 So. 2d 711 (Fla. Dist. Ct. App. 1966); *State v. Butler,* 11 Ohio St. 2d 23, 227 N.E.2d 627, 21 A.L.R.3d 102 (1967). In others, the basis is that the parties were jointly engaged in conduct which resulted in death, so that one driver in effect induces the other to drive in an unsafe fashion and is therefore culpable in the other's death. *State v. Melcher,* 15 Ariz. App. 157, 487 P.2d 3 (1971); *People v. Kemp,* 150 Cal. App. 2d 654, 310 P.2d 680 (1957).

■ We espouse one further theory: Washington's negligent homicide statute, RCW 46.61.520(1), states: "When the death of *any person* shall ensue . . . as a proximate

result of injury received by the driving *of any vehicle by any person . . ."* (italics ours) while intoxicated, or driving recklessly or in disregard of the safety of others, that person shall be guilty of negligent homicide. "Any person" includes both Mr. Ayon and Mr. Escobar. Had Mr. Escobar not been racing, or had he been going at the legal rate of speed instead of accelerating, the opportunity for the passing car to pull back into the proper lane of travel prior to the collision would have been greatly enhanced and the accident avoided. The accident reconstruction expert indicated that because of the parties' excessive speeds, Mr. Escobar's rapid acceleration on Mr. Ayon's right, cutting off escape, and the split–second reaction times involved at those speeds, a collision became inevitable the moment Mr. Ayon began to pass. Upon this basis, we hold the court could find Mr. Escobar's driving was a proximate cause of the collision and the ensuing death. Because Mr. Escobar was racing, Mr. Ayon could not avoid the collision and died.

Judgment affirmed.

McINTURFF, C.J., and GREEN, J., concur.

Reconsideration denied September 16, 1981.