561 So.2d 347 (1990)
Isaac Alejandro VELAZQUEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 89-96.
District Court of Appeal of Florida, Third District.
May 1, 1990.
Rehearing Denied June 18, 1990.
*348 David Mermell, Coral Gables, for appellant.
Robert A. Butterworth, Atty. Gen., and Yvette Rhodes Prescott and Anita Gay, Asst. Attys. Gen., for appellee.
Before SCHWARTZ, C.J., and HUBBART and GERSTEN, JJ.
HUBBART, Judge.
This is an appeal by the defendant Isaac Alejandro Velazquez from a final judgment of conviction and sentence for vehicular homicide which was entered below upon a nolo contendere plea. The defendant, upon entry of such plea, specifically reserved for appeal the denial of his pretrial motion to dismiss the information herein under Fla.R. Crim.P. 3.190(c)(4). The sole issue presented for review is whether a defendant driver of a motor vehicle who participates in a reckless and illegal "drag race" on a public road may be properly convicted of vehicular homicide [§ 782.071, Fla. Stat. (1987)] for the death of one of the co-participant drivers suffered in the course of the "drag race"  when the sole basis for imposing liability is the defendant's participation in said race. We hold that the defendant may not be held criminally liable under the above statute in such case because the co-participant driver, in effect, killed himself by his voluntary and reckless driving in the subject "drag race" and thus the defendant's actions in engaging in the said race was not a proximate cause of the co-participant's death.

I
The defendant Velazquez was charged by information with the crime of vehicular homicide. Specifically, the information alleged that on April 23, 1988, the defendant
"did unlawfully and feloniously operate a motor vehicle in a reckless manner, to wit: Participated in a DRAG RACE, RAN A STOP SIGN and EXCEEDED the SPEED LIMIT with his VEHICLE, and thereby cause the death of ADALBERTO ALVAREZ, in violation of 782.071 Florida Statutes."
The defendant filed a motion to dismiss this information under Fla.R.Crim.P. 3.190(c)(4) on the ground that the undisputed material facts in the case demonstrated that the state did not, as a matter of law, have a prima facie case of vehicular homicide against the defendant. The defendant set forth in the motion to dismiss certain facts which he swore to be true in open court at the hearing on the subject motion.[1] The *349 state filed a traverse in which it altered one non-material fact stated in the motion to dismiss and added an additional set of facts based on sworn depositions taken in the case. Accepting the sworn facts stated in the motion to dismiss, as supplemented and altered by the traverse, the material undisputed facts in the case are as follows.
On April 23, 1988, at approximately 2:30 A.M., the defendant Velazquez met the deceased Adalberto Alvarez at a Hardee's restaurant in Hialeah, Florida. The two had never previously met, but in the course of their conversation agreed to race each other in a "drag race" with their respective automobiles. They, accordingly, left the restaurant and proceeded to set up a quarter-mile "drag race" course on a nearby public road which ran perpendicular to a canal alongside the Palmetto Expressway in Hialeah; a guardrail and a visible stop sign[2] stood between the end of this road and the canal. The two men began their "drag race" at the end of this road and proceeded away from the canal in a westerly direction for one-quarter mile. Upon completing the course without incident, the deceased Alvarez suddenly turned his automobile 180 degrees around and proceeded east toward the starting line and the canal; the defendant Velazquez did the same and followed behind Alvarez. Alvarez proceeded in the lead and attained an estimated speed of 123 m.p.h.; he was not wearing a seat belt and subsequent investigation revealed that he had a blood alcohol level between .11 and .12. The defendant Velazquez, who had not been drinking, trailed Alvarez the entire distance back to the starting line and attained an estimated speed of 98 m.p.h. As both drivers approached the end of the road, they applied their brakes, but neither could stop. Alvarez, who was about a car length ahead of the defendant Velazquez, crashed through the guardrail first and was propelled over the entire canal, landing on its far bank; he was thrown from his car upon impact, was pinned under his vehicle when it landed on him, and died instantly from the resulting injuries. The defendant also crashed through the guardrail, but landed in the canal where he was able to escape from his vehicle and swim to safety uninjured.
Based on these facts, the trial court denied the motion to dismiss, finding that it was a question of fact for the jury as to whether the defendant's participation in the "drag race" was a sufficient legal cause of the deceased's death so as to support a conviction for vehicular homicide. The defendant subsequently entered a plea of nolo contendere and reserved for appeal the denial of his motion to dismiss; the trial court then placed the defendant on four years probation. This appeal follows.

II
The vehicular homicide statute, under which the defendant was charged and convicted, provides as follows:
"`Vehicular homicide' is the killing of a human being by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another. Vehicular homicide is a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084."
§ 782.071(1), Fla. Stat. (1987). There are two statutory elements to vehicular homicide: (1) the defendant must operate a motor vehicle in a reckless manner likely to cause the death of, or great bodily harm to, another, and (2) this reckless operation of a *350 motor vehicle must be the proximate cause of the death of a human being. Byrd v. State, 531 So.2d 1004, 1006 (Fla. 5th DCA 1988); M.C.J. v. State, 444 So.2d 1001, 1004-05 (Fla. 1st DCA), rev. denied, 451 So.2d 849 (Fla. 1984); J.A.C. v. State, 374 So.2d 606, 607 (Fla. 3d DCA 1979), rev. denied, 383 So.2d 1203 (Fla. 1980); compare Fla.Std. Jury Instr. (Crim.) 72 (1989) (vehicular homicide).
Contrary to the defendant's argument, we have no trouble in concluding that the first element of this offense is clearly established on this record. Plainly, the defendant operated a motor vehicle in a reckless manner, likely to cause death or great bodily harm to another, in that (a) he participated in a highly dangerous "drag race" with the deceased on a public road in which both lanes were used as a speedway, and (b) he drove his vehicle at the excessive speed of 98 m.p.h. during the "drag race." Without question, the defendant's motor vehicle operation endangered the lives of all persons in the vicinity of the "drag race," namely, people in other motor vehicles and nearby pedestrians. See McCreary v. State, 371 So.2d 1024 (Fla. 1979).
The second element of this offense, however, has given us considerable pause, as no doubt it did the trial court, because no endangered third party in the vicinity of the "drag race" was killed in this case; moreover, it is here that the parties to this appeal marshal their primary authorities and argument. It is therefore necessary that we consult the Florida law on this subject, and survey as well the relevant law thereon throughout the country. Nonetheless, we approach this subject with a certain degree of caution, mindful that the problems raised by the element of "proximate cause" in cases of this nature "present enormous difficulty (especially in homicide [cases]) because of the obscurity of that concept," an obscurity which has resulted in the announcement of "varying and sometimes inconsistent rules in the numerous areas in which the problem has arisen." Model Penal Code and Commentaries § 2.03 comment 1, at 255-56 (1985).

A
At the outset, it seems clear that the proximate cause element of vehicular homicide in Florida embraces, at the very least, a causation-in-fact test; that is, the defendant's reckless operation of a motor vehicle must be a cause-in-fact of the death of a human being. In this respect, vehicular homicide is no different than any other criminal offense in which the occurrence of a specified result, caused by a defendant's conduct, is an essential element of the offense  such as murder, [§ 782.04, Fla. Stat. (1989)], manslaughter [§ 782.07, Fla. Stat. (1989)], aggravated battery [§ 784.045, Fla. Stat. (1989)], and arson [§ 806.01, Fla. Stat. (1989)]. Clearly there can be no criminal liability for such result-type offenses unless it can be shown that the defendant's conduct was a cause-in-fact of the prohibited result, whether the result be the death of a human being, personal injury to another, or injury to another's property. To be sure, this cause-in-fact showing is insufficient in itself to establish the aforesaid "proximate cause" element in a vehicular homicide case, but it is clearly a sine qua non ingredient thereof. 1 W. LaFave & A. Scott, Substantive Criminal Law § 3.12(a),(b), at 390-96 (1986); Model Penal Code and Commentaries § 2.03 explanatory note, at 254 (1985).
Courts throughout the country have uniformly followed the traditional "but for" test in determining whether the defendant's conduct was a cause-in-fact of a prohibited consequence in result-type offenses such as vehicular homicide. Under this test, a defendant's conduct is a cause-in-fact of the prohibited result if the said result would not have occurred "but for" the defendant's conduct; stated differently, the defendant's conduct is a cause-in-fact of a particular result if the result would not have happened in the absence of the defendant's conduct. Thus, a defendant's reckless operation of a motor vehicle is a cause-in-fact of the death of a human being under Florida's vehicular homicide statute [§ 782.071(1), Fla. Stat. (1987)] if the subject death would not have occurred "but for" the defendant's reckless driving or *351 would not have happened in the absence of such driving. 1 W. LaFave & A. Scott, Substantive Criminal Law § 3.12(b), at 393-94 (1986); Model Penal Code and Commentaries § 2.03 and comment 2, at 257-58 (1985); compare Stahl v. Metropolitan Dade County, 438 So.2d 14, 17-18 (Fla. 3d DCA 1983).
In relatively rare cases, however, the "but for" test for causation-in-fact fails and has been abandoned in favor of the "substantial factor" test. This anomaly occurs when two defendants, acting independently and not in concert with one another, commit two separate acts, each of which alone is sufficient to bring about the prohibited result  as when two defendants concurrently inflict mortal wounds upon a human being, each of which is sufficient to cause death. In such case, each defendant's action was not a "but for" cause of death because the deceased would have died even in the absence of each defendant's conduct  although obviously not in the absence of both defendants' conduct considered together. In these rare cases, the courts have followed a "substantial factor" test, namely, the defendant's conduct is a cause-in-fact of a prohibited result if the subject conduct was a "substantial factor" in bringing about the said result. Thus, each defendant's conduct in independently and concurrently inflicting mortal wounds on a deceased clearly constitutes a "substantial factor" in bringing about the deceased's death, and, consequently, is a cause-in-fact of the deceased's death. 1 W. LaFave & A. Scott, Substantive Criminal Law § 3.12(b), at 394-95 (1986); compare Stahl v. Metropolitan Dade County, 438 So.2d 14, 18 (Fla. 3d DCA 1983).

B
The "proximate cause" element of vehicular homicide in Florida embraces more, however, than the aforesaid "but for" causation-in-fact test as modified by the "substantial factor" exception. Even where a defendant's conduct is a cause-in-fact of a prohibited result, as where a defendant's reckless operation of a motor vehicle is a cause-in-fact of the death of a human being, Florida and other courts throughout the country have for good reason declined to impose criminal liability (1) where the prohibited result of the defendant's conduct is beyond the scope of any fair assessment of the danger created by the defendant's conduct, or (b) where it would otherwise be unjust, based on fairness and policy considerations, to hold the defendant criminally responsible for the prohibited result. See 1 W. LaFave & A. Scott, Substantive Criminal Law § 3.12(c)-(h), at 396-421 (1986), and cases collected; compare M.C.J. v. State, 444 So.2d 1001, 1004-05 (Fla. 1st DCA), rev. denied, 451 So.2d 849 (Fla. 1984); Stahl v. Metropolitan Dade County, 438 So.2d 14, 19 (Fla. 3d DCA 1983).
In deaths resulting from illegal "drag racing" on a public road, as here, it has been held in Florida that the driver of one of the racing vehicles was properly convicted of manslaughter when the driver of another vehicle in the race collided head on with a non-participant motor vehicle which was lawfully using the subject highway, killing the driver of same. Jacobs v. State, 184 So.2d 711 (Fla. 1st DCA 1966). The court reasoned that the defendant, by participating in the "drag race," was aiding and abetting each of the other participant drivers in the race in committing reckless driving  so that when one of the participants committed a manslaughter in the course of the race against a third party, the defendant was also guilty of manslaughter. In reaching this result, the court relied on the following rules of law stated by Wharton and Clark & Marshall:
"`* * * If each of two persons jointly engage in the commission of acts which amount to criminal negligence, and as a result of which a third person is killed, each may be found guilty of manslaughter even though it may be impossible to say whose act actually caused the death.'
... .
`There may be principals in the second degree and accessories before the fact to involuntary manslaughter. Thus, if two men drive separate vehicles at a furious and dangerous speed along the *352 highway, each inciting and abetting the other, and one of them drives over and kills a person, the one thus causing the death is guilty of manslaughter as principal in the first degree, and the other is guilty as principal in the second degree. * * *'"
Jacobs v. State, 184 So.2d at 716 (quoting 1 Wharton, Criminal Law and Procedure § 290 (Anderson 1957) and Clark & Marshall, Crimes, 3d ed. § 164) (emphasis added).
Where, however, a participant passenger in such an illegal "drag race," accidently grabs the steering wheel of a vehicle involved in the race, instead of the gear shift he was assigned to operate, causing the vehicle to go out of control, crash, and kill the passenger  this court has held that the defendant driver of the subject motor vehicle was improperly convicted of vehicular homicide. J.A.C. v. State, 374 So.2d 606 (Fla. 3d DCA 1979), rev. denied, 383 So.2d 1203 (Fla. 1980). The court reasoned that the passenger's reckless act of grabbing the steering wheel was an independent intervening act which superseded the respondent's wrongful conduct in participating in the "drag race." Id. at 607. Although, obviously, the respondent's participation in the subject race was a "but for" cause-in-fact of the passenger's death and such death was plainly within the scope of the danger created by the defendant's conduct in participating in the race  this court nonetheless implicitly concluded that it would be unjust to hold the defendant criminally responsible for the passenger's death because the passenger, in effect, killed himself by his own reckless conduct.
The result reached in J.A.C. is in accord with the weight of better-reasoned decisions on this subject throughout the country. These courts have uniformly concluded that a driver-participant in an illegal "drag race" on a public road cannot be held criminally responsible for the death of another driver participant when (a) the deceased, in effect, kills himself by his own reckless driving during the race, and (b) the sole basis for attaching criminal liability for his death is the defendant's participation in the "drag race."[3] The policy reasons for reaching this result are best expressed in State v. Petersen, 17 Or. App. 478, 495, 522 P.2d 912, 920 (1974) (Schwab, C.J., dissenting) (dissent adopted by the Oregon Supreme Court in State v. Petersen, 270 Or. 166, 526 P.2d 1008 (1974)):
"[T]he question is whether defendant's reckless conduct `caused' the death of the victim. The problem here is not `causation in fact,' it is `legal causation.' In unusual cases like this one, whether certain conduct is deemed to be the legal cause of a certain result is ultimately a policy question. The question of legal causation thus blends into the question of whether we are willing to hold a defendant responsible for a prohibited result. Or, stated differently, the issue is not causation, it is responsibility. In my opinion, policy considerations are against imposing responsibility for the death of a participant in a race on the surviving racer when his sole contribution to the death is the participation in the activity mutually agreed upon.
... .
It is not unheard of for people to engage in hazardous vocations and avocations. It could be said, for example, that professional racetrack drivers earn their living by consciously disregarding a substantial risk that death will occur on the racetrack. Yet, it would probably strike most people as strange if the surviving drivers were prosecuted for manslaughter following a fatal racetrack accident... .
... .
My point is that people frequently join together in reckless conduct. As long as all participants do so knowingly and voluntarily, I see no point in holding the survivor(s) guilty of manslaughter if the reckless conduct results in death... ."
*353 522 P.2d at 920-21 (citations and footnote omitted). LaFave and Scott also summarize the legal basis for these decisions:
"It is submitted that the true reason for the holding [in these cases] is the court's feeling ... that A should not, in all justice, be held for the death of B who was an equally willing and foolhardy participant in the bad conduct which caused his death."
1 W. LaFave and A. Scott, Substantive Criminal Law § 3.12, at 418 (1986).

III
Turning now to the instant case, it is clear that the defendant's reckless operation of a motor vehicle in participating in the "drag race" with the deceased was, technically speaking, a cause-in-fact of the deceased's death under the "but for" test. But for the defendant's participation in the subject race, the deceased would not have recklessly raced his vehicle at all and thus would not have been killed. However, under the authority of J.A.C. and the better reasoned decisions throughout the country, the defendant's participation in the subject "drag race" was not a proximate cause of the deceased's death because, simply put, the deceased, in effect, killed himself by his own volitional reckless driving  and, consequently, it would be unjust to hold the defendant criminally responsible for this death.
The undisputed facts in this case demonstrate that the "drag race" was, in effect, over when the defendant and the deceased had completed the agreed-upon one-quarter mile course and had crossed the finish line. Unexpectedly, however, the deceased suddenly whirled his vehicle around and headed back toward the starting line and the canal which ran perpendicular to the road on which he was travelling; although the defendant then followed, it is plain that it was the deceased's sole decision to return to the starting line, as apparently this had not previously been agreed upon. At any rate, the deceased, who had consumed a considerable amount of alcohol and was wearing no seat belt, attained an estimated speed of 123 m.p.h. on his return trip; applied the brakes as he approached the end of the road but was unable to stop; crashed through a protective guard rail; and incredibly vaulted the entire canal, landing on the far bank. He was thrown from his vehicle upon impact, was pinned under the vehicle when it landed on him, and died instantly from the resulting injuries. Although the defendant was about one-car length in back of the deceased during the deceased's fatal return to the starting line, the defendant at no time struck the deceased's vehicle and did not physically propel it in any way across the canal. Clearly, the deceased was on a near-suicide mission when, on his own hook, he returned to the starting line of the race after the race was apparently over, attaining a murderous speed of 123 m.p.h., vaulted a canal, and killed himself. This being so, it would be unjust to hold the defendant criminally responsible for the deceased's unexpected and near-suicidal conduct.
We agree that if the deceased had collided with an oncoming motorist who happened to be in the vicinity lawfully using the subject road resulting in the said motorist's death, the defendant would be criminally liable for this death on an aiding-and-abetting theory; clearly, the deceased would be guilty of vehicular homicide in killing the oncoming motorist, and the defendant, in participating in the illegal "drag race," would be aiding and abetting the deceased in the latter's reckless driving and ultimate negligent homicide. Jacobs v. State, 184 So.2d 711 (Fla. 1st DCA 1966). In such a case, however, the oncoming motorist could in no way be said to be responsible for his own death and, consequently, no policy or fairness reason would exist for finding no proximate cause. Clearly, this cannot be said in the instant case.
The state nonetheless relies on cases from other jurisdictions which have reached a contrary result to the one we reach herein.[4] We have reviewed these cases, but are not persuaded by their reasoning *354 because we think they lead to an unjust result. In our judgment, it is simply unfair, unjust, and just plain wrong to say that the defendant in the instant case is criminally responsible for the death of the deceased when it is undisputed that the deceased, in effect, killed himself. No one forced this young man to participate in the subject "drag race"; no one forced him to whirl around and proceed back toward the canal after the race was apparently over; no one forced him to travel 123 m.p.h., vault a canal, and kill himself upon impact. He did all these things himself, and was, accordingly, the major cause of his own death. We are constrained by law to construe criminal statutes strictly in favor of the accused, § 775.021(1), Fla. Stat. (1989), and, given this salutary principle of statutory construction, we are unwilling to construe our vehicular homicide statute to impose criminal liability on the defendant under the circumstances of this case.
The final judgment of conviction and sentence under review is reversed, and the cause is remanded to the trial court with directions to grant the defendant's motion to dismiss.
Reversed and remanded.
NOTES
[1] The jurat in the defendant's sworn motion to dismiss was technically defective, see State v. Rodriguez, 523 So.2d 1141 (Fla. 1988), but this deficiency was cured by the defendant's oath given in open court. We reject the state's argument that this might be a defective oath because the court reporter did not transcribe the exact wording of the oath. The state did not object to the oath when given to the defendant and, accordingly, has waived any objection thereto. See State v. Booker, 529 So.2d 1239 (Fla. 1st DCA 1988); State v. Gomez, 508 So.2d 784, 785 (Fla. 5th DCA 1987); Goodmakers v. State, 450 So.2d 888, 890 (Fla. 2d DCA 1984).
[2] The defendant states that the stop sign "was obscured by overgrown vegetation"; the state asserts that the stop sign was visible and only slightly obscured by a tree limb. Contrary to the state's contention, however, this conflict on the facts does not require that the motion to dismiss be denied because (a) the conflict is on a non-material fact, and (b) the conflict is resolved in favor of the state's version. See State v. Carda, 495 So.2d 912, 914 (Fla. 3d DCA 1986); Fox v. State, 384 So.2d 226, 227 (Fla. 3d DCA), rev. denied, 392 So.2d 1379 (Fla. 1980); Ellis v. State, 346 So.2d 1044, 1046 (Fla. 1st DCA), cert. denied, 352 So.2d 175 (Fla. 1977).
[3] Thacker v. State, 103 Ga. App. 36, 117 S.E.2d 913 (1961); State v. Uhler, 61 Ohio Misc. 37, 402 N.E.2d 556 (1979); State v. Petersen, 17 Or. App. 478, 522 P.2d 912, 920 (1974) (Schwab, C.J., dissenting) (dissent adopted by Oregon Supreme Court in State v. Petersen, 270 Or. 166, 526 P.2d 1008 (1974)); Commonwealth v. Root, 403 Pa. 571, 170 A.2d 310 (1961).
[4] State v. Melcher, 15 Ariz. App. 157, 487 P.2d 3 (1971); State v. McFadden, 320 N.W.2d 608 (Iowa 1982); State v. Escobar, 30 Wash. App. 131, 633 P.2d 100 (1981).