721 So.2d 346 (1998)
Matthew Paul NUNEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 96-04794.
District Court of Appeal of Florida, Second District.
October 23, 1998.
Richard Escobar of Richard Escobar, P.A., Tampa, for Appellant.
*347 Robert A. Butterworth, Attorney General, Tallahassee, and Timothy A. Freeland, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Judge.
Matthew Nunez contests his conviction and sentence for vehicular homicide, alleging numerous grounds for reversal. We affirm his conviction, but reverse his sentence and remand for a new sentencing hearing.
In March 1996, Nunez was involved in a minor automobile collision at West Kennedy Boulevard and North Boulevard in Tampa. Nunez did not stop, and the other vehicle began following his car. Nunez testified that he was scared, and that the occupants of the other car were making threatening gestures at him. He attempted to elude his pursuers by driving down side streets, turning off his headlights, and increasing his speed. The driver of the other car admitted following Nunez for two to three miles; Nunez claimed it was more like 20 minutes.
The chase ended at the intersection of Dale Mabry Highway and El Prado Boulevard. As Nunez drove along El Prado, he saw that the light at Dale Mabry was red. His path across the intersection was blocked by a car that sat in the southbound lane of Dale Mabry, waiting to turn left onto eastbound El Prado. Nunez testified that he was going approximately forty miles per hour. He drove through the red light into the intersection, and avoided the turning car. But a pickup truck traveling north on Dale Mabry collided with Nunez's car. A fourteen-year-old boy was thrown from the open bed of the truck, and was killed. The other occupants of the pickup, who were riding in the cab, were not seriously injured.
The State charged Nunez with manslaughter, vehicular homicide, and leaving the scene of an accident. The jury convicted him of vehicular homicide, and acquitted him of the other two charges. The court sentenced Nunez to a downward departure sentence of ten years' imprisonment, suspended after five years, followed by five years' probation.
At the outset we find no error in the court's decision to submit the case to the jury. Accordingly, we affirm the denial of Nunez's motion for judgment of acquittal. We also reject Nunez's argument that he is entitled to a new trial based on improperly admitted impeachment testimony. The court's error in permitting a detective to testify about inconsistent statements of a witness was harmless, beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). Nunez's remaining points on appeal can be grouped into two broad categories: asserted error regarding final argument and instructions to the jury; and challenges to his sentence. We discuss these categories in more depth below.

FINAL ARGUMENT AND JURY INSTRUCTIONS
Nunez contends that the trial court should have permitted him to argue that the victim's negligence contributed to his death, and that it should have instructed the jury on this point.[1] We disagree. The victim's negligence would have been an intervening act that relieved Nunez of criminal liability only if the act was the sole proximate cause of the accident that caused the victim's death. See Filmon v. State, 336 So.2d 586, 591 (Fla. 1976). Under no view of the evidence could the fact that the boy was riding in the back of the pickup truck be considered the sole proximate cause of the accident. But for the fact that Nunez ran the red light, the accident would not have happened. See also Union v. State, 642 So.2d 91 (Fla. 1st DCA 1994) (holding that trial court correctly refused to admit testimony about victims' failure to wear seat belts, and correctly gave instruction that failure to wear seat belts was not a defense to vehicular homicide; lack of seatbelts was not the sole proximate cause of the victims' deaths). Here, the trial court properly refused to permit argument or to give an instruction on the victim's negligence.
*348 Nunez's next arguments concern the issue of whether his acts were willful and wanton. First, he contends that the court should have defined the terms willful and wanton in its jury instructions on vehicular homicide.[2] We note that the court did define these terms in its instruction on the lesser included offense of reckless driving, which immediately followed the instruction on vehicular homicide. The court also instructed the jury that to convict Nunez of vehicular homicide, it had to find that he "operated the vehicle in a reckless manner likely to cause the death of or great bodily harm to another person." We agree with our sister districts that it is not error to fail to use or define willful and wanton when instructing the jury on the crime of vehicular homicide. See W.E.B. v. State, 553 So.2d 323 (Fla. 1st DCA 1989); Jackson v. State, 456 So.2d 916 (Fla. 1st DCA 1984); Rushton v. State, 395 So.2d 610 (Fla. 5th DCA 1981). Accordingly, we affirm the court's refusal to give Nunez's requested instruction.
Nunez also maintains that the court should have instructed the jury that his conduct was not willful if it was caused by circumstances beyond his control. Nunez's proposed jury instruction on this point stated:
If you find that the accused was by circumstances and conditions beyond his control and against his will placed in the position and subjected to the conditions which resulted in the death of [the victim] you should find him Not Guilty of the charge of Vehicular Homicide.
The First District has applied this principle in a vehicular homicide case, but it did so on unrelated facts. See W.E.B.,, 553 So.2d at 327 (noting that evidence reasonably suggested that defendant was propelled into victim's lane of traffic because he lost control of his truck and over-corrected when truck slipped off unusually steep shoulder). Nunez admits on appeal that the "circumstance and condition beyond his control" was his own fear for his safety. The State contends, and we agree, that this instruction was actually an attempt to put the defense of coercion before the jury. But the elements of the coercion defense were not contained in the proposed instruction. To have his crime excused on the ground of coercion, a defendant must show that, at the time the offense was committed, he was subjected to real, imminent, and impending danger, or that he had reasonable grounds for believing that such danger was real, imminent, or impending. See Hall v. State, 136 Fla. 644, 187 So. 392 (1939); Koontz v. State, 204 So.2d 224 (Fla. 2d DCA 1967). Nunez's proposed instruction was not a correct statement of the law regarding coercion. The trial court properly rejected it.
Next, Nunez claims that the court improperly denied him the opportunity to argue that he was coerced into running the red light. The record shows that Nunez's counsel made the following statement in his closing argument:
Was [Nunez's conduct] reckless in light of the fact he's got people right behind him, with 100, 200 feet behind who he reasonably fears are going to cause him serious bodily injury? Is it unreasonable? is it reckless? Is it willful and wanton? The answer is no.
To be sure, the prosecutor made a contrary argument, and he pointed out that the jurors would not be instructed on coercion. But the fact remains that Nunez's counsel argued this point to the jury. We reject his assertion that the trial court did not allow him to do so.
Nunez's final requested jury instruction was an attempt to put the issue of causation before the jury.[3] In support of the *349 instruction, he relies on Velazquez v. State, 561 So.2d 347 (Fla. 3d DCA 1990). In that case, the decedent and the defendant engaged in a drag race. As the Velazquez court noted, the defendant's participation was "technically speaking, a cause-in-fact of the deceased's death under the `but for' test. But for the defendant's participation in the subject race, the deceased would not have recklessly raced his vehicle at all and thus would not have been killed." Id. at 353 (emphasis in original). The court went on to remark that well-reasoned decisions throughout the country had held that the defendant's participation in a drag race was not a proximate cause of the deceased's death because "the deceased, in effect, killed himself by his own volitional reckless drivingand, consequently, it would be unjust to hold the defendant criminally liable for this death." Id.
In Velazquez, the deceased was not wearing a seat belt, and he had consumed a considerable amount of alcohol. After the race was over, he turned his car around and sped in the other direction at approximately 123 miles per hour. Unable to stop, he crashed through a guard rail, and was killed. The court held "it would be unjust to hold the defendant criminally responsible for the deceased's unexpected and near-suicidal conduct." Id. But the court hypothesized that if an oncoming motorist who was lawfully using the road had been killed as a result of the race, the defendant would be criminally liable for the death. Such a motorist would not have been responsible for his own death, and thus, considerations of fairness would not require a finding of no proximate cause. Id.
Here, Nunez was not involved in a race, and the deceased was not a co-participant; he was an innocent victim. The trial court correctly denied Nunez's requested instruction based on Velazquez. It simply was not pertinent to the facts of this case.

SENTENCE
Nunez contends that the court erred in adding 120 points to his sentencing scoresheet for the death of the victim because death is an element of his offense. We recently rejected this argument in Wendt v. State, 711 So.2d 1166 (Fla. 2d DCA 1998) (en banc). Therefore, we affirm on this point.
Nunez's second sentencing argument is that his downward departure sentence improperly exceeded the statutory maximum.[4] We agree.
Vehicular homicide is a third degree felony, which has a statutory maximum penalty of five years' imprisonment. See §§ 782.071(1), 775.082(3)(d), Fla. Stat. (1995). However, Nunez's scoresheet reflected a sentencing range of 111 months to 185 months, primarily because of the addition of 120 points for the death of the victim, previously discussed. Therefore, his sentence was governed by section 921.001(5), Florida Statutes (1995), which provides that if the recommended sentence under the guidelines exceeds the statutory maximum sentence in section 775.082, "the sentence under the guidelines must be imposed absent a departure."
The trial court departed downward, and sentenced Nunez to ten years' imprisonment, suspended after five years, followed by five years' probation. But under section 921.001(5), a departure sentence "must be within any relevant maximum sentence limitations provided in s. 775.082." See also § 921.0016(1)(e), Fla. Stat. (1995) ("[a] departure sentence must be within any relevant maximum sentence limitations provided by s. *350 775.082."); Fla. R.Crim. P. 3.703(d)(26) ("[s]uch downward departure must be equal to or less than the maximum sentence authorized by section 775.082."). Therefore, because the trial court chose to impose a downward departure sentence, it was required to sentence Nunez within the five-year maximum contained in section 775.082(3)(d). We reverse Nunez's sentence and remand with instructions that the court impose a sentence within the statutory maximum.
Conviction affirmed, sentence reversed and remanded.
FULMER, A.C.J., and CASANUEVA, J., concur.
NOTES
[1] The proposed jury instructions on this issue were:

It is unlawful to ride on any vehicle upon any portion thereof not designed or intended for the use of passengers.
No person shall ride on any vehicle upon any portion thereof not designed or intended for the use of passengers....
[2] Nunez's requested jury instruction stated:

The reckless operation of a motor vehicle is defined as operation of a motor vehicle with a willful or wanton disregard for the safety of persons or property. "Willful" means "intentionally, knowingly, and purposefully," and "Wanton" means "with a conscious and intentional indifference to consequences and with knowledge that damage is likely to be done to persons or property."
[3] The requested instruction stated:

Regarding the element of the causation of the death of [the victim], you must consider the following questions:
(A) Whether the death of [the victim] was beyond the scope of any fair assessment of the danger created by Matthew Nunez's operation of a motor vehicle; or
(B) Whether it would otherwise be unjust, based on fairness and policy considerations, to hold Matthew Nunez criminally responsible for the death of [the victim].
If your answer is yes to either of the two questions just stated you must find that Matthew Nunez's actions were not the legal cause of [the victim's] death and you must find Matthew Nunez Not Guilty.
[4] Nunez was sentenced in November 1996, after the effective date of the Criminal Appeal Reform Act. See § 924.051, Fla. Stat. (Supp.1996). He did not object to his sentence at the time it was pronounced, nor did he file a motion to correct the sentence under Florida Rule of Criminal Procedure 3.800(b). However, we have jurisdiction to review this alleged error because Nunez properly preserved other issues, and we may correct his sentence because it is seriously and patently erroneous. See Denson v. State, 711 So.2d 1225 (Fla. 2d DCA 1998).