OPINION
Michael J. Buterbaugh, defendant-appellant, appeals his convictions entered upon a jury verdict in the Franklin County Court of Common Pleas for two counts of involuntary manslaughter, a violation of R.C. 2903.04(B). Appellant also appeals the sentence imposed upon him for his convictions. We affirm appellant's convictions and reverse and remand appellant's sentence.
During the early morning hours of February 21, 1997, an accident occurred on Broad Street in Whitehall, Ohio. A 1984 white Pontiac Firebird traveling eastbound on Broad Street, collided with a 1994 maroon Saturn traveling westbound. Shane Hutchinson, the driver of the 1984 Firebird; Amy Miller, a passenger in the 1984 Firebird; and Rebecca Kiser, a passenger in the Saturn; died from injuries they sustained from the accident. Although seriously injured, Robin Fleming, the driver of the Saturn, survived the accident. The skid marks left by the two vehicles showed that the point of impact between the two vehicles occurred in the westbound center through lane of Broad Street.
Trent Martin, an officer with the Whitehall Police Department, testified that he spoke with appellant at the accident scene and that appellant told him that he had witnessed the accident. Martin asked appellant to provide a written statement of what he had witnessed. Appellant wrote:
 About 02:45 AM I was traveling east bound on on [sic] Broad St (ST. RT. 16) when a white Pontiac firebird also east bound, on Broad lost control and slid into the west bound lane of Broad St. colliding with a automobile heading west bound. I stopped to see if I could offer any assistance. I found both partys [sic] of eacha [sic] car still breathing and asked my companion to call for Assistance.
Approximately forty-five minutes after the accident, Detective Randy Snider, an investigator for the Whitehall Police Department, arrived at the accident scene and began investigating the cause of the accident. He testified that based upon the physical evidence at the scene of the accident, the 1984 Firebird began its skid in the eastbound curb lane of Broad Street. The car then crossed both the eastbound center through lane and the center turning lane, eventually hitting the Saturn in the westbound center through lane. Snider also testified that while examining the 1984 Firebird, he noticed "other damage" that was "fresh" and on the driver's side of the car. Snider stated that this damage was not consistent with his perceived events of the accident because the 1984 Firebird hit the Saturn on the passenger's side of the car. Snider testified that when he asked appellant later that morning about the accident, appellant told him that the 1984 Firebird passed his car and "that the cars must have had some contact." The car appellant was driving was a white 1986 Pontiac Firebird.
After examining the 1986 Firebird and seeing that it had fresh damage on the passenger's side of the car that corresponded with the damage on the driver's side of the 1984 Firebird, Snider impounded the car. Paint samples were taken from the damaged areas of the Firebirds and were tested. The tests showed the two vehicles had made contact. Snider also took photographs of the damage on the vehicles. Snider also learned that appellant was friends with Hutchinson and Miller.
The police were able to discover that there were other witnesses to the events just prior and during the accident. Shane Durnin was a passenger in the 1986 Firebird. Linda Jensen was traveling westbound on Broad Street and was in front of the Saturn. onald Rock was stopped at a stop light at the corner of Collingwood and Broad Street, which is west of the accident site.
On April 23, 1997, appellant was indicted by a grand jury for three counts of involuntary manslaughter, a violation of R.C. 2903.04; three counts of aggravated vehicular homicide, a violation of R.C. 2903.06; and one count of aggravated vehicular assault, a violation of R.C. 2903.08. The theory advanced by the state was that appellant proximately caused the accident because of street racing, a violation of R.C. 4511.251, and/or speeding, a violation of R.C. 4511.21.
Appellant was tried before a jury, who found him guilty of two counts of involuntary manslaughter. Appellant was sentenced to serve three years and five years in prison for each of the two counts. The trial court also found that appellant's sentences were to be served consecutively. Appellant appeals his convictions and his sentence and presents the following five assignments of error:
 FIRST ASSIGNMENT OF ERROR: Appellant's convictions for involuntary manslaughter are not supported by evidence establishing that the deaths of the victims were the proximate result of either speeding, in violation of R.C. 4511.21, or street racing, in violation of R.C. 4511.251.
 SECOND ASSIGNMENT OF ERROR: The trial court committed plain error by instructing the jury on the elements of street racing in a manner incorporating a conclusive or burden shifting presumption which violates the Fourteenth Amendment.
 THIRD ASSIGNMENT OF ERROR: Counsel was ineffective in failing to object to inclusion of a conclusive or burden shifting presumption in instructions on the elements of street racing as a predicate offense for the crime of involuntary manslaughter.
 FOURTH ASSIGNMENT OF ERROR: The judgment entry erroneously fails to set forth appellant's acquittal of counts two, four, five, six and seven of the indictment.
 FIFTH ASSIGNMENT OF ERROR: The court erroneously sentenced appellant as a first offender to consecutive sentences in excess [of] the maximum sentence for the most serious offense of which he was convicted.
Appellant argues in his first assignment of error that: (1) there was insufficient evidence to support appellant's convictions for involuntary manslaughter, (2) appellant was entitled to an acquittal pursuant to Crim.R. 29, and (3) appellant's convictions for involuntary manslaughter were against the manifest weight of the evidence. We will address these issues in the order that they have been presented.
"Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict." State v. Smith (1997), 80 Ohio St.3d 89, 113, certiorari denied (1999), ___ U.S. ___, 118 S.Ct. 1811, following State v. Thompkins (1997), 78 Ohio St.3d 380, 387. "When reviewing a claim of insufficient evidence, the relevant inquiry is whether any rational factfinder, after viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Clemons (1998), 82 Ohio St.3d 438, 444, certiorari denied (1998), ___ U.S. ___, 119 S.Ct. 816, followingJackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, and State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact." State v. Clemons,82 Ohio St.3d at 444.
Appellant argues that the evidence was insufficient to sustain a conviction for involuntary manslaughter pursuant to R.C.2903.04(B), which states: "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a misdemeanor of the first, second, third, or fourth degree or a minor misdemeanor." Counts 1 and 3 of the indictment alleged that appellant violated R.C. 2903.04 by "committing or attempting to commit a misdemeanor, to wit: Street Racing, a violation of section 4511.251 and/or Speeding, a violation of section 4511.21 of the Ohio Revised Code." Counts 1 and 3 also alleged that appellant caused the deaths of Amy Miller and Rebecca Kiser. Therefore, in order to determine if there was sufficient evidence for appellant to be convicted of violating R.C. 2903.04(B), we must first determine whether there was sufficient evidence that appellant committed a misdemeanor by violating R.C. 4511.21 and/or R.C. 4511.251.
R.C. 4511.21 provides that it is prima-facie lawful for the operator of a motor vehicle to operate it at a speed not exceeding thirty-five miles per hour on all state routes or through highways within municipal corporations outside business districts. R.C. 4511.21(B)(3). It is prima-facie unlawful for any person to exceed the speed limitation of R.C. 4511.21(B)(3) "or any declared pursuant to this section by the director or local authorities." R.C. 4511.21(C).
In the present case, evidence was presented that appellant was operating a motor vehicle on State Route 16 (Broad Street), within the city limits of Whitehall, Ohio, and that the legal speed limit was thirty-five miles an hour. Shane Durnin, a passenger in appellant's car, testified that when he was first interviewed by the police about the incident, he "wasn't telling them everything * * * [t]hat we had been traveling at such a high rate of speed." Linda Jensen testified that while she was traveling westbound on Broad Street, she saw coming towards her "two cars going eastbound at a high rate of speed, and they were like neck and neck." Jensen also testified that the two cars "were just speeding down through there, * * * too fast for that area."
Detective Snider testified as an expert in accident reconstruction. Snider stated: "I come to a reasonable conclusion that [the 1984 Firebird] was running 80 to 100 miles an hour" based upon: (1) the weight of the 1984 Firebird and the Saturn, (2) measurements of the skid marks of the two vehicles, (3) the condition of the road at the time of the accident, (4) the "drag factor" or roughness of the pavement, (5) the speed of the Saturn vehicle, and (6) the distance the Saturn traveled backwards after being struck by the 1984 Firebird. Snider also testified that based upon the eyewitness accounts of the accident, that appellant's speed "had to be relatively close to [the 1984 Firebird's] speed in order to be physically there in that spot instead of someplace else on earth."
After having reviewed the above evidence in a light most favorable to the state, we find that a rational trier of fact could find beyond a reasonable doubt that appellant violated R.C.4511.21(B). For example, Detective Snider's conclusion that the 1984 Firebird was "running 80 to 100 miles an hour" coupled with Jensen's testimony that the Firebirds "were like neck and neck" would lead to the reasonable conclusion that appellant was traveling 80 to 100 MPH shortly before the accident occurred.
R.C. 4511.251(B) states: "No person shall participate in street racing upon any public road, street, or highway in this state." R.C. 4511.251(A) defines street racing as:
 * * * [T]he operation of two or more vehicles from a point side by side at accelerating speeds in a competitive attempt to out-distance each other or the operation of one or more vehicles over a common selected course, from the same point to the same point, wherein timing is made of the participating vehicles involving competitive accelerations or speeds. * * * The operation of two or more vehicles side by side either at speeds in excess of prima-facie lawful speeds established by divisions (B)(1)(a) to (B)(7) of section 4511.21 of the Revised Code or rapidly accelerating from a common starting point to a speed in excess of such prima-facie lawful speeds shall be prima-facie evidence of street racing.
Durnin testified that appellant "pressed on the gas, accelerated from the traffic light * * * [q]uickly." He stated that the "quick acceleration * * * caught me off guard." He also testified that his impression of what was occurring was that "[m]ore or less [appellant] was trying to stay ahead of Shane Hutchinson." Durnin testified that Hutchinson "just came past us. We were never side by side for any period of time more than a couple seconds."
Ronald Rock testified that at the corner of Collingwood and Broad, he saw two Firebirds side by side revving their engines. He also testified that it "[l]ooked to me like they had windows down, conversing back and forth, like they were — it looked to me like they were getting ready to have a drag race, is what it looked like to me." He further testified that when the light turned green "[t]hey took off, as I thought they would, and as they took off, I proceeded slowly, and I was looking in my rearview mirror, and I could see the car that was closest to me fishtail."
After reviewing the above evidence in a light most favorable to the state, we find that a rational trier of fact could find beyond a reasonable doubt that appellant violated R.C.4511.251(A). Durnin and Rock provided evidence that appellant and Hutchinson rapidly accelerated from a common starting point, and we have already determined that there is sufficient evidence that appellant was speeding in violation of R.C. 4511.21(B).
Since we have found that there is sufficient evidence that appellant committed the misdemeanors of drag racing and speeding, in order to determine if there is sufficient evidence that appellant committed the offense of involuntary manslaughter, we must also determine whether appellant "cause[d] the death of another * * * as a proximate result of the offender's committing or attempting to commit a misdemeanor." R.C. 2903.04(B).
"The `proximate result' phrase in R.C. 2903.04(A) means that, in order to commit involuntary manslaughter under this section, the defendant's felonious acts not only resulted in the death of another but that the criminal act was a proximate cause of the death." State v. Hamrick (Dec. 19, 1997), Lucas App. No. L-96-059, unreported. Proximate result as it relates to involuntary manslaughter is also defined as "something that occurs in a natural and continuous sequence or something that would not have occurred but for an act." State v. Black (Feb. 25, 1999), Mahoning App. No. 95-CA-7, unreported.
 * * * The term "proximate result" as it is used in the definition of involuntary manslaughter resembles the concept of "proximate cause" in that the defendant will be held responsible for those foreseeable consequences that are known to be, or should be known to be, within the scope of the risk created by his conduct. * * *
State v. Bumgardner (Aug. 21, 1998), Greene App. No. 97-CA-103, unreported.
 * * * Under the statute, defendant cannot be held responsible for consequences no reasonable person could expect to follow from his conduct; he will be held responsible for consequences which are direct, normal, and reasonably inevitable — as opposed to extraordinary or surprising — when viewed in the light of ordinary experience. * * *
State v. Losey (1985), 23 Ohio App.3d 93, 95.
Ohio courts have held that criminal liability should not be imposed on the survivor of a drag race whose only contribution to the death of the other participant was his own participation in the race. State v. Uhler (1979), 61 Ohio Misc. 37, 41. See, also, State v. Kovatch (Oct. 18, 1985), Lake App. No. 10-275, unreported. "`"To hold a person criminally responsible for a homicide, his act must have been the proximate cause of the death as distinguished from the cause of the condition affording an opportunity for the compassing of the death by some other unconnected agency."'" Uhler, 61 Ohio Misc. at 41, quotingThacker v. State (1961), 103 Ga. App. 36, 117 S.E.2d 913, 915. However, criminal liability can arise when there is actual, physical contact between the vehicles. Kovatch; Uhler, at 41. For example, in State v. Butler (1967), 11 Ohio St.2d 23, the Ohio Supreme Court found sufficient evidence to support criminal convictions of vehicular homicide for both participants in a drag race. The court held:
 Where two defendants engage in an automobile drag race, and one defendant, while attempting to pass the other by driving on the left side of the highway, is suddenly confronted by a car coming over a crest in the road, and in the resulting collision the driver of the oncoming car is killed, and there is testimony that the defendant attempted to avoid the collision by operating his car to the right, striking the other defendant's automobile before colliding with the oncoming car * * * [u]nder the evidence as stated above, both defendants, either as principal or aider and abettor, are guilty of manslaughter in the second degree as provided in Section 4511.18, Revised Code.[1]
Butler, paragraphs two and three of the syllabus.
Other states have also extended criminal liability to both drivers in a drag race in similar circumstances. For example, in Goldring v. State (1995), 103 Md. App. 728,654 A.2d 939, a Maryland appellate court sustained a conviction of involuntary manslaughter for the surviving participant of a drag race in which the other driver attempted to merge into the defendant's lane of traffic, struck the side of defendant's vehicle, and lost control of his vehicle, eventually hitting and killing two bystanders. The court found that "it is clear that the jury could have rationally concluded that the deaths of the spectators were caused by the joint gross negligence of [the other driver] and appellant in agreeing to engage in the race."Goldring, at 942.
In another Maryland appellate case, the court held "that where a third person has been killed as a direct consequence of the illegal racing of motor vehicles, any driver participating in the race may be convicted of manslaughter by automobile * * * regardless of which driver actually collided with the victim or the victim's vehicle, resulting in the death." Pineta v. State
(1993), 98 Md. App. 614, 634 A.2d 982, 988. Other states have reached similar results. See State v. Martin (La. 1989),539 So.2d 1235, 1239; State v. McFadden (Iowa 1982), 320 N.W.2d 608; Statev. Melcher (1971), 15 Ariz. App. 157, 487 P.2d 3, 8; Jacobs v.State (Fla.App. 1966), 184 So.2d 711, 716. Therefore, we find that the question that must be addressed in the present case is whether sufficient evidence was presented showing that appellant's actions in participating in a drag race and/or speeding as defined by R.C. 4511.21 and R.C. 4511.251, proximately caused the deaths of Miller and Kiser.
We have already found that sufficient evidence was presented to show that appellant was speeding and drag racing as defined by R.C. 4511.21 and R.C. 4511.251. Evidence was presented at appellant's trial showing that Miller and Kiser died as the result of the 1984 Firebird colliding with the Saturn. Evidence was also presented indicating that Hutchinson did not have control of the 1984 Firebird prior to colliding with the Saturn. For example, the skid marks left by the 1984 Firebird shows that Hutchinson was attempting to stop his vehicle before it collided with the Saturn. Additionally, Rock and Jensen testified that they saw one of the two Firebirds "fishtail" and Durnin testified that both Firebirds were sliding and fishtailing. Evidence was also presented showing that contact was made between the two Firebirds. An analysis of paint scrapings from the two Firebirds showed that the vehicles made contact. Additionally, witnesses to the accident also testified that they heard or saw the Firebirds make contact.
Evidence was also presented showing that the contact that was made between the two Firebirds occurred immediately prior to Hutchinson losing control of his vehicle. Jensen testified that after the two Firebirds went by her car: "I heard what I thought, like, you know, like a nick, just a glance. Like something off of, bounced off of something or scraped something, and then I heard the crash." Jensen also testified that after she heard the scrape, "I looked in the rear view mirror, I saw one of the white cars * * * veer off toward the bridge."
Durnin testified that contact occurred between the two Firebirds and described it as "a bump, felt like the rear right quarter panel on [the 1986 Firebird], like [Hutchinson] clipped it or ran into it as he was attempting to pass us." Durnin also testified that after the bump, the 1984 Firebird "kept going past us. Within a matter of a second or so, couple seconds, at that point he started to fishtail in front of us. His car slid in front of us and onto the oncoming traffic." Durnin also stated that the car he was riding in also started to fishtail and slide after it made contact with the 1984 Firebird.
Snider, testifying as an expert witness, after reviewing the physical evidence stated: "[T]he two cars had the contact side to side. And then the car on the right lane lost its control, started sliding, skidding across the lanes of traffic." Snider also testified that "in the area of Beechwood Road is where I believe the two cars had their side-to-side contact." The diagram of the accident scene Snider prepared shows that the skid marks left by the 1984 Firebird began approximately forty-five feet past the south-east corner of Beechwood and Broad. Snider also testified that a vehicle traveling eighty miles per hour travels 117.33 feet per second. Therefore, combining this portion of Snider's testimony with Snider's estimation of the Firebirds' speeds to be approximately 80 to 100 MPH, leads to the conclusion that Hutchinson began skidding within approximately one second after the Firebirds collided. Additionally, the accident report prepared by Snider indicates that the fatal accident involved three vehicles.
Appellant, in an interview with Snider, stated that Hutchinson "was beside him for a couple seconds, and that he passed in front of him as he was losing control and crossing over the lanes and while braking." Snider stated that appellant told him that when Hutchinson was losing control, "Hutchinson's left rear wheel might have been equal to [appellant's] right front wheel" and that "it was very close."
After reviewing the above evidence in a light most favorable to the state, we find that there is sufficient evidence to support appellant's convictions for involuntary manslaughter. A reasonable person could conclude that based upon the evidence, appellant was travelling at a high rate of speed and was engaged in a drag race with Hutchinson. A reasonable person could also conclude that Hutchinson lost control of the 1984 Firebird shortly after his vehicle made contact with the vehicle appellant was driving, and that the loss of control was caused in part by the contact between the two vehicles. The direct, normal, and reasonably foreseeable consequences of a drag race is that contact can occur between two vehicles, which contact at such a high rate of speed can cause one of the drivers to lose control of their vehicle. It is also reasonable to conclude that there is a high likelihood that when a driver loses control of a vehicle while traveling 80 to 100 MPH, the occupants in that vehicle, as well as others in the immediate vicinity, may suffer injuries severe enough to cause death.
Accordingly, we find that sufficient evidence supports a finding that the deaths of Miller and Kiser were the proximate result of appellant's actions, and that appellant is guilty of two counts of involuntary manslaughter pursuant to R.C.2903.04(B).[2] However, we note that if contact had not occurred between the vehicles and it could not be established that Hutchinson lost control of the vehicle immediately after the contact, the evidence would have been insufficient to find that the deaths of Miller and Kiser were the proximate result of appellant's action.
Appellant also argues that he was entitled to an acquittal pursuant to Crim.R. 29. At the conclusion of the state's presentation of evidence against appellant, appellant's counsel made a motion to dismiss pursuant to Crim.R. 29. The trial court overruled the motion.
Crim.R. 29(A) states:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.
A trial court's decision to deny a Crim.R. 29(A) motion for acquittal based on the sufficiency of the evidence will be upheld if after viewing the evidence in a light most favorable to the state, the reviewing court finds that any rational fact finder could have found the essential elements of the charge proven beyond a reasonable doubt. State v. Dennis (1997), 79 Ohio St.3d 421,430, certiorari denied, (1998) ___ U.S. ___, 118 S.Ct. 1078, followingJackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781,2789, and Jenks, 61 Ohio St.3d 259, paragraph two of the syllabus.
We have already found that sufficient evidence was presented supporting appellant's convictions. The evidence we based this finding upon was presented during the state's presentation of their case against appellant and prior to appellant's motion to dismiss. Therefore, since the standard of review is the same for insufficient evidence and a trial court's decision regarding a motion for acquittal pursuant to Crim.R. 29(A), we find that the trial court did not err in overruling appellant's motion to dismiss pursuant to Crim.R. 29.
Appellant also argues that his convictions were against the manifest weight of the evidence. The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. Clemons, 82 Ohio St.3d, at 444; State v.Williams (Apr. 29, 1999), Franklin App. No. 98AP-975, unreported (1999 Opinions 988, 995).
In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the fact finder's resolution of the conflicting testimony. Thompkins, 78 Ohio St.3d, at 387. Whether a criminal conviction is against the manifest weight of the evidence "requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180, 193, certiorari denied (1999), ___ U.S. ___, 119 S.Ct. 2407.
 * * * ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").
Thompkins, at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
"The weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact." State v. Burdine-Justice (1998), 125 Ohio App.3d 707,716. The trier of fact has the benefit of seeing and hearing the witnesses testify and is in the best position to determine the facts of the case. In re Good (1997), 118 Ohio App.3d 371, 377.
Following a review of the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find no basis to believe that the jury clearly lost its way, that a manifest miscarriage of justice occurred, or that appellant's convictions were against the manifest weight of the evidence. See Smith,80 Ohio St.3d, at 114. The jury could have reasonably concluded that: (1) Miller and Kiser died as the result of the collision between the Saturn and Hutchinson's vehicle, (2) Hutchinson lost control of his vehicle because of the contact between the two Firebirds, and (3) the contact between the two Firebirds was the proximate result of appellant's reckless behavior. If the weight of the evidence had not established that Hutchinson lost control of his vehicle because of the contact, appellant could not have been convicted of involuntary manslaughter because according to Ohio law, participation in a drag race alone is insufficient evidence to find a defendant guilty of involuntary manslaughter. See Butler,11 Ohio St.2d 23, paragraphs two and three of the syllabus;Kovatch, Lake App. No. 10-275; Uhler, 61 Ohio Misc. at 41.
Additionally, the jury was instructed that in order to find appellant guilty of involuntary manslaughter, "you must find beyond a reasonable doubt that on or about the 21st day of February 1967 [sic] and in Franklin County, Ohio, [appellant] recklessly caused the death[s] of [Miller and Kiser] as a proximate result of committing or attempting to commit the offense of street racing * * * and/or the offense of speeding * * *."[3]
A presumption exists that a jury has followed the instructions given to it by the trial court. State v. Murphy (1992), 65 Ohio St.3d 554,584, certiorari denied (1993), 510 U.S. 834,114 S.Ct. 109.
Appellant also argues that the evidence shows that he is innocent and a review of the evidence does show possible inconsistencies in the jury's verdict.[4] However, the jury has a greater ability to weigh the evidence and to assess credibility in reaching its conclusions. Accordingly, we find that appellant's convictions are not against the manifest weight of the evidence. Appellant's first assignment of error is overruled.
Appellant argues in his second assignment of error that the jury instruction for street racing that was given in the present case, violated the Fourteenth Amendment to the United States Constitution. A review of the disputed jury instruction shows that it mirrors the language of R.C. 4511.251(A) which defines street racing and states in part that the "operation of two or more vehicles side by side either at speeds in excess of prima-facie lawful speeds * * * or rapidly accelerating from a common starting point to a speed in excess of such prima-facie lawful speeds shall be prima-facie evidence of street racing." Appellant argues that this "amounts to a constitutionally impermissible presumption because it could be interpreted by the jury either as mandatory, or as shifting a burden of proof to the accused." Appellant claims that using the above quoted section of R.C. 4511.25(A) as prima-facie evidence of street racing eliminates the "competitive attempt" element of street racing. We disagree.
All legislative enactments enjoy a presumption of constitutionality. State ex rel. Taft v. Franklin Cty. Court ofCommon Pleas (1998), 81 Ohio St.3d 480, 481. A court's review of the legislation begins with the strong presumption that the legislation is constitutional, and before a court may declare it unconstitutional, it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible. State v. Cook (1998), 83 Ohio St.3d 404, 409, certiorari denied (1999), ___ U.S. ___, 119 S.Ct. 1122.
A conclusive presumption is defined as "an `irrebuttable direction' to the jury to find intent upon proof of the defendant's voluntary action." State v. Montgomery (1991),61 Ohio St.3d 410, 415, certiorari denied (1992), 502 U.S. 1111,112 S.Ct. 1215, following Sandstrom v. Montana (1979), 442 U.S. 510,517, 99 S.Ct. 2450, 2456. A conclusive presumption unconstitutionally shifts the burden of persuasion to the defendant to disprove an element of the crime charged.Montgomery, 61 Ohio St.3d, at 415. "Prima facie evidence has been defined as `that which is sufficient to carry the case to the trier of fact and, if unrebutted, to support a conclusion in favor of the plaintiff.'" In re Worthington Nursing Home (Mar. 7, 1995), Franklin App. No. 94APE08-1123, unreported (1995 Opinions 794, 798).
The elements outlined in the "prima-facie evidence" portion of R.C. 4511.251(A) closely mirrors the definition of "street racing" provided in the same section with one exception, the noninclusion of "competitive intent." It should be noted that the intent of a person is often difficult to prove and many times must be inferred since few criminals admit that their intent was to commit a crime. State Automobile Ins. Co. v. Clear (June 22, 1998), Butler App. No. CA97-08-171, unreported. "[I]t is very difficult to prove what the state of a man's mind at a particular time is, but if it can be ascertained it is as much a fact as anything else." United States Postal Serv. Bd. of Governors v.Aikens (1983), 460 U.S. 711, 716-717, 103 S.Ct. 1478, 1482, quoting Edgington v. Fitzmaurice (1885), 29 Ch.Div. 459, 483. Many criminal statutes in the Revised Code allow the use of "prima-facie evidence" to prove a criminal violation.[5]
Appellant fails to provide a plausible example of how evidence of the operation of two or more vehicles side by side (1) at speeds in excess of prima-facie lawful speeds, or (2) rapidly accelerating from a common starting point to a speed in excess of such prima-facie lawful speeds, does not show competitive intent. Appellant's claim that the above definition would criminalize the conduct of vehicles that happen to be side by side, accelerating from a green light is meritless. The key to proving drag racing is not evidence that two or more vehicles side by side are accelerating from a common starting point. Instead, the key is evidence of rapid acceleration and reaching speeds in excess of lawful speeds. Evidence that appellant rapidly accelerated from Collingwood, was "neck and neck" with the 1984 Firebird, and that he reached speeds greatly exceeding lawful speeds, is sufficient to show that appellant was engaged in a drag race as defined in R.C. 4511.251. We find that the jury instruction did not create an unconstitutional conclusive presumption.
Additionally, appellant is precluded from raising this issue on appeal since Crim.R. 30(A) states that on appeal "a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict." A review of the record shows that appellant's counsel did not object to the jury instruction prior to the jury retiring to consider its verdict. Accordingly, appellant's second assignment of error is overruled.
Appellant argues in his third assignment of error that his trial counsel was ineffective because he failed to object to the jury instruction concerning street racing. "In order to prevail on a claim of ineffective assistance of counsel, appellant must show that counsel's performance fell below an objective standard of reasonableness and, in addition, that prejudice arose from counsel's deficient performance." State v. Goff (1998),82 Ohio St.3d 123, 139, certiorari denied (1999), ___ U.S. ___,119 S.Ct. 2402, following Strickland v. Washington (1984),466 U.S. 668, 687-688, 104 S.Ct. 2052, 2064. The proper standard in showing prejudice is that appellant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.State v. Loza (1994), 71 Ohio St.3d 61, 83, certiorari denied (1995), 514 U.S. 1120, 115 S.Ct. 1983. Even if a reviewing court makes a finding that trial counsel should have objected, appellant is still required to show prejudice. State v. Reynolds (1998),80 Ohio St.3d 670, 679, certiorari denied (1998), ___ U.S. ___,118 S.Ct. 2328.
In the present case, appellant cannot show that he was prejudiced by his counsel's failure to object. Appellant was not convicted of drag racing and his convictions for involuntary manslaughter were not solely dependent upon a finding that he engaged in drag racing. Therefore, a review of the record shows that appellant cannot show that there is a reasonable probability that the result of the proceeding would have been different. Additionally, we have already found in appellant's second assignment of error that the jury instruction concerning street racing did not create an unconstitutional conclusive presumption. Therefore, we find that appellant's trial counsel did not err by not objecting to the jury instruction. Accordingly, appellant's third assignment of error is overruled.
Appellant argues in his fourth assignment of error that the trial court erred in not setting forth appellant's acquittal for Counts 2, 4, 5, 6, and 7 of the indictment. Crim.R. 32(B) requires the trial court to set forth the verdict and the sentence. "If the defendant is found not guilty * * * the court shall render judgment accordingly." Crim.R. 32(B). Crim.R. 32(B) reflects the axiom that a court of record speaks only through its journal and not by oral pronouncement or mere written minute or memorandum. State ex rel. White v. Junkin (1997), 80 Ohio St.3d 335,337. The trial court must set forth the verdict or its findings as to each and every charge prosecuted against an accused, and failure to do so renders the judgment substantially deficient under Crim.R. 32(B). State v. Pace (June 5, 1998), Hamilton App. No. C-970546, unreported. "In [the] absence of a signed journal entry reflecting the court's ruling as to each charge, the order of the trial court is interlocutory." State v.Bourdess (May 29, 1997), Cuyahoga App. No. 70541, unreported. Additionally, "failure to journalize the disposition of all charges pending against each defendant prevents the partial determination from constituting a final appealable order." Id.
In the present case, a review of the record shows that appellant was found not guilty by the jury for Counts 2, 4, 5, 6 and 7 of the indictment. The jury's not guilty verdicts were not reflected in the July 27, 1998 judgment entry. However, the trial court corrected this error with an amended entry filed on July 15, 1999. Our court allowed the record to be supplemented with this amended entry on July 21, 1999. A review of the amended entry shows that the trial court properly journalized the jury's verdicts for each of the counts against appellant. Therefore, the issues raised in appellant's assignment of error are moot. Appellant's fourth assignment of error is overruled.
Appellant argues in his fifth assignment of error that: (1) a community control sanction would have been a more appropriate sentence pursuant to R.C. 2929.12; (2) the trial court failed to make the findings necessary to support the imposition of a maximum or consecutive sentence; and (3) the consecutive prison terms imposed by the trial court were excessive pursuant to R.C.2929.14. We will address appellant's arguments in the order presented.
Appellant was found guilty by a jury of committing two counts of involuntary manslaughter, which is a third degree felony. R.C. 2903.04(C). If a prison term is imposed for a third degree felony, the prison term shall be one, two, three, four or five years. R.C. 2929.14(A)(3). In determining whether to impose a prison term as a sanction for a third degree felony, the sentencing court shall comply with the purposes and principles of sentencing under R.C. 2929.11 and R.C. 2929.12. R.C. 2929.13(C).
"The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11(A). A trial court has broad discretion in sentencing a defendant and a reviewing court will not interfere with the sentence unless the trial court abused its discretion. State v. Drake (Dec. 17, 1998), Franklin App. No. 98AP-448, unreported (1998 Opinions 5698, 5709). However, in exercising its discretion, the trial court must consider the factors set forth in R.C. 2929.12. State v. Heer (Sept. 24, 1998), Franklin App. No. 97APA12-1670, unreported (1998 Opinions 4464, 4480). Pursuant to R.C. 2929.12, the sentencing court shall consider: (1) the factors relating to the seriousness of the conduct contained in R.C. 2929.12(B) and (C); (2) the factors relating to the likelihood of the offender's recidivism contained in R.C. 2929.12(D) and (E); and (3) any other factors that are relevant to achieving those purposes and principles of sentencing. State v. Epley (Aug. 25, 1998), Franklin App. Nos. 97APA11-1467 and 97APA11-1468, unreported (1998 Opinions 3028, 3032).
In the present case, the court stated in its judgment entry:
 The Court has considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the factors set forth in R.C. 2929.12, and the Court stated on the record its reasons for imposing this sentence. In addition, the court has weighed the factors set forth in the applicable provisions of R.C. 2929.13 and 2929.14. The Court further finds that a prison term is not mandatory pursuant to R.C. 2929.13(F).
A trial court's mere assertion that it has reviewed the factors and provisions set forth in the new sentencing provisions "is not in itself a sufficient finding on the record of the court's reasoning in determining its sentence." Drake, at 5710. However, in determining whether the trial court properly considered the factors set forth in R.C. 2929.12, the reviewing court may examine the sentencing hearing transcript. State v. Joyner (March 23, 1999), Franklin App. No. 98AP-785, unreported (1999 Opinions 495, 509).
The court stated during appellant's sentencing hearing that it had reviewed appellant's presentence investigation report. The report indicated that appellant had previously been found guilty of Reckless Operation of a Motor Vehicle (December 27, 1992) and found guilty five different times of Driving Under Suspension-Revocation (August 26, 1993, September 2, 1993, February 2, 1994, May 26, 1996, and August 30, 1997). The fifth incident of Driving Under Suspension-Revocation occurred after appellant had been involved in the accident that is the subject of this case. Appellant also had previously been found guilty of eleven other traffic offenses including speeding, failure to yield to a traffic control light, and following too closely. Additionally, at the time of the accident, appellant was driving with a suspended driver's license. The trial court stated during appellant's sentencing hearing:
 The factors that I've considered in this matter have been your prior record and history of driving, your apparent failure to respond to the sanctions that were imposed for your driving, and I can't sit here today and say you are not remorseful about what has occurred in this matter, but I can say that you have not demonstrated that to anyone here to any degree that you should demonstrate that.
 I also noted that with respect to the factors that would favor you under the law that you have no prior criminal record or conviction. They have all been primarily traffic offenses; and the final factor, seriousness factor to consider is the fact that this incident resulted in the death of three people and one person that will have lifelong problems as a result of the injuries she sustained.[6]
 After considering all of the factors in this matter, the Court at this time will impose a sentence on Count Three of five years incarceration; and with respect to Count One, the Court will impose a sentence of three years incarceration.
After having reviewed the record, we find that the trial court did not abuse its discretion in imposing a prison term on appellant because it is consistent with the purposes and principles of sentencing under R.C. 2929.11 and R.C. 2929.12. Also, when considering the purpose of traffic laws and appellant's history of violating traffic laws, a term of incarceration is appropriate even though appellant had not previously committed a felony. We also find that the trial court's decision was based upon evidence in the record and that the court sufficiently reviewed the factors of R.C. 2929.12.
Appellant also argues that the trial court failed to make the findings necessary to support the imposition of a maximum sentence or for consecutive sentences. The trial court imposed the maximum prison term for a third degree felony for Count 3 of the indictment, and the court also held that appellant was to serve consecutively the two sentences from Counts 1 and 3.
R.C. 2929.14(C) states in part:
 * * * [T]he court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to [R.C. 2929.14(A)] only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under [R.C. 2929.14(D)(3)], and upon certain repeat violent offenders in accordance with [R.C. 2929.14(D)(2)].
When determining whether the trial court complied with R.C.2929.14(C), the reviewing court may review the judgment entry, the transcript, and the sentencing worksheet. State v. McCullough
(July 27, 1999), Franklin App. No. 98AP-988, unreported (1999 Opinions 2337, 2345).
Concerning whether appellant's conduct was so serious to constitute "the worst forms of the offense," the court stated that "the incident resulted in the death of three people and one person that will have lifelong problems as a result of the injuries she sustained." See R.C. 2929.12(B)(2). Concerning the likelihood of appellant committing future crimes, the court stated that appellant had a history of driving convictions and that appellant had apparently failed "to respond to the sanctions that were imposed for your driving." See R.C. 2929.12(D)(2) and (3). The court also stated that appellant had not demonstrated "to anyone here to any degree" that he was remorseful "about what has occurred in this matter." See R.C. 2929.12(D)(5). Therefore, we find that the court sufficiently complied with R.C. 2929.14(C) in order to "impose the longest prison term authorized" for Count 3 of the indictment.
If multiple prison terms are imposed on an offender for convictions of multiple offenses, R.C. 2929.14(E)(4) allows a court to impose consecutive prison terms if the court finds:
 * * * [T]hat the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
While we have previously stated that the new sentencing laws do not " `require talismanic words from the sentencing court,' " it is essential that the trial court demonstrate on the record that the "trial court considered the necessary criteria and made the necessary findings." State v. Finch (Dec. 3, 1998), Franklin App. No. 98AP-145, unreported (1998 Opinions 5371, 5375-5376), quoting State v. Fincher (Oct. 14, 1997), Franklin App. No. 97APA03-352, unreported (1997 Opinions 4287, 4297), dismissed (1998), 81 Ohio St.3d 1443. A review of the record does not demonstrate that the court found that: (1) consecutive service is necessary to protect the public from future crime or punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) at least one of the factors contained in R.C. 2929.14(E)(4) (a through c).
Therefore, we reverse and remand the trial court's determination that appellant should serve consecutive sentences. We note that the trial court may still find that appellant should serve consecutive sentences, but in order to do so, the trial court must also make the required findings of R.C. 2929.14(E)(4). Since we are reversing the trial court's determination that appellant should serve consecutive sentences, we do not need to address appellant's argument that the consecutive prison terms imposed by the trial court were excessive pursuant to R.C.2929.14.
Accordingly, we sustain appellant's fifth assignment of error and affirm the court's imposition of a prison term on appellant and sentencing appellant to serve five years on Count 3 and three years on Count 1 of the indictment. We reverse and remand the trial court's decision requiring appellant to serve consecutive sentences for his convictions.
Appellant's first, second, third, and fourth assignments of error are overruled, and appellant's fifth assignment of error is sustained. The judgment of the trial court is affirmed in part, reversed in part and this cause is remanded to the trial court for resentencing consistent with this opinion.
Judgment affirmed in part; reversed in part; cause remanded.
TYACK and PETREE, JJ., concur.
[1] We note that in Butler, the Ohio Supreme Court found that the evidence was sufficient to support a conviction for manslaughter in the second degree as provided in R.C. 4511.18.Butler, at 37. Former R.C. 4511.18 stated in part: "No person shall unlawfully and unintentionally kill another while violating any law of this state applying to the use or regulation of traffic." This statute was repealed effective January 1, 1974, and is analogous to the offense of vehicular homicide in the present R.C. 2903.07.
[2] We note that it is questionable whether appellant could have been held criminally liable for Hutchinson's death. In Velazquezv. State (Fla.App. 1990), 561 So.2d 347, dismissed (Fla. 1990), 569 So.2d 1280, a Florida appellate court reasoned that when a driver's death was caused only by drag racing the defendant, "the defendant's participation in the subject `drag race' was not a proximate cause of the deceased's death because, simply put, the deceased, in effect, killed himself by his own volitional reckless driving-and, consequently, it would be unjust to hold the defendant criminally responsible for this death." Velazquez,561 So.2d at 353. See, also, State v. Martin (La. 1989),539 So.2d at 1239, fn. 9 ("The only noticeable trend in exceptions to the general rule of [joint criminal liability arising out of joint participation in a race] occurs in cases where the victim was also a participant in the race. * * * In these cases, criminal liability was held inappropriate for the death of a willing participant in the criminally negligent conduct.")
[3] We note that a more specific jury instruction may have been more appropriate considering the complexity of the issues regarding "proximate result" in R.C. 2903.04(A).
[4] For example, it may have been inconsistent for the jury to find appellant guilty of involuntary manslaughter in Count 1 of the indictment (Miller's death was the proximate result of appellant's actions), and then find appellant not guilty of involuntary manslaughter in Count 2 of the indictment (Hutchinson's death was the proximate result of appellant's actions) even though Miller and Hutchinson were both in the 1984 Firebird at the time of the accident. However, an inconsistent jury verdict does not mandate a reversal of a criminal defendant's conviction. United States v. Powell (1984), 469 U.S. 57,105 S.Ct. 471; Williams, Franklin App. No. 98AP-975, (1999 Opinions at 988, 993-994). See, also, Velazquez, at 347.
[5] See R.C. 2901.12(H), course of criminal conduct; R.C.2901.13 purpose to avoid prosecution; R.C. 2913.41 purpose to defraud; R.C. 2923.24, criminal purpose in possessing criminal tools; R.C. 2945.64, embezzlement; R.C. 4507.35, failure to be a licensed driver; R.C. 4511.43, failure to yield right-of-way; R.C.4513.40, proof of reckless driving; R.C. 4513.64, abandonment of a junk motor vehicle; R.C. 4513.65, willful failure to comply with notice; R.C. 4549.45, knowledge of odometer's altered condition; R.C. 4549.50, intent to defraud; and R.C. 4551.03, unlawful transportation of Christmas trees.
[6] Appellant argues in his brief that the trial court erred in considering the pain and suffering of Robin Fleming even though the jury found appellant not guilty of committing an aggravated assault upon Fleming. However, a sentencing judge may take into account facts introduced at trial relating to other charges, even ones of which the defendant has been acquitted. Epley, at 3033, following United States v. Watts (1997), 519 U.S. 148,117 S.Ct. 633, 635.